1  Sean D. Beatty (Bar No. 155328)
2  John W. Myers IV (Bar No. 179975)
   BEATTY & MYERS, LLP
   100 W. Broadway, West Tower, Suite 500
3  Long Beach, California 90802
   Telephone: (562) 606-1530
4  Fax: (562) 268-1141

FILED
CLERK, U.S. DISTRICT COURT

MAY - 9 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

5  Attorneys for defendants, Toyota Motor Sales, U.S.A., Inc., and
6  Toyota Motor North America, Inc.

7          UNITED STATES DISTRICT COURT

8  CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

9

10

11  MICHAEL HOULF,                          Case No. CV12-04054 JFW(MANx)

12              Plaintiff,                  TOYOTA MOTOR NORTH
                                            AMERICA, INC.'S NOTICE OF
13          vs.                             REMOVAL TO FEDERAL COURT
                                            (INCLUDING CONSENT OF TMS
14  TOYOTA MOTOR NORTH
    AMERICA, INC.; TOYOTA                              )
15  MOTOR SALES, U.S.A., INC.; and
    DOES 1 through 10, inclusive,
16                                          Original Complaint Filed: June 14, 2010
                Defendants.                 First Amended Complaint Filed: April 5,
17                                          2012
18

19

20       TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT

21  COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN

22  DIVISION, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

23       Defendant Toyota Motor North America, Inc. ("TMA") provides notice that

24  pursuant to 28 U.S.C. Section 1441, TMA removes to this Court the state court

25  action titled *TOYOTA MOTOR CASES: MICHAEL HOULF, vs. TOYOTA MOTOR*

26  *NORTH AMERICA, INC.; TOYOTA MOTOR SALES, U.S.A., INC.; and DOES 1*

27  *through 10, inclusive*, Superior Court of the State of California, County of Los

28  Angeles, Judicial Council Coordination Proceeding No. 4621 (original Placer

1   County case no. SCV27280).

2       The following is a short and plain statement of the grounds for removal:

3

4   ## THE STATE COURT COMPLAINT

5       1.    On June 14, 2010, Plaintiff Michael Houlf commenced a civil action

6   in the Superior Court of the State of California, County of Placer, by filing a

7   complaint against Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS"), identified

8   as Case No. SCV27280.  (Exhibit A.)  Because it raised claims related to

9   unintended acceleration in a Toyota vehicle, Plaintiff's case was added to a

10   coordinated proceeding, Judicial Council Coordination Proceeding No. 4621

11   (JCCP), for such cases on October 5, 2010.  (Exhibit B.)

12       2.    Plaintiff was later given leave to amend to add new claims and to add

13   Toyota Motor North America, Inc. ("TMA") as a defendant.  (Exhibit C.)  Plaintiff

14   filed his first amended complaint naming TMA as a defendant for the first time on

15   January 5, 2012.  Plaintiff served TMA with a summons and first amended

16   complaint on April 9, 2012.   (Exhibit D.)

17       3.    Attached as Exhibit A is a copy of the original complaint against only

18   Toyota Motor Sales, U.S.A., Inc. filed in the Superior Court of Placer County.

19       4.    Attached as Exhibit B are copies of (1) the order of the Superior

20   Court of California, County of Los Angeles, establishing Judicial Council

21   Coordination Proceeding No. 4621 and assigning a coordination trial judge, for

22   cases involving claims of unintended acceleration in certain Toyota vehicles; and

23   (2) the notice of ruling adding the *Houlf* case to the JCCP.

24       5.    Attached as Exhibit C is a copy of all pleadings, process, and orders

25   served on TMA in the state court action, including the first amended complaint,

26   the summons to TMA, and proof of service thereof.  *See* 28 U.S.C. § 1446(a).

27   ///

28

## FEDERAL QUESTION JURISDICTION EXISTS BECAUSE PLAINTIFF STATES CLAIMS ARISING UNDER FEDERAL LAW

6.     Federal courts have original federal question jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

7.     An action "arises under" federal law within the meaning of § 1331 if federal law creates the cause of action and/or grants federal jurisdiction to hear the case. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690, 126 S. Ct. 2121, 2131 (2006). The "arising under" cause of action is satisfied whenever federal law creates the cause of action, expressly or impliedly. Although one of several claims does not "arise under" federal law, removal is still appropriate if that claim is transactionally related (i.e., "supplemental") to at least one substantial federal claim. *Zuniga v. Blue Cross & Blue Shield of Michigan*, 52 F.3d 1395 (6th Cir. 1995).

8.     Here, federal law expressly creates some of the claims brought by plaintiff in his state court action. In plaintiff's fourth cause of action, plaintiff alleges, among other things, that he has suffered damages because TMA breached an express warranty under the Federal Magnuson-Moss Warranty Act, 15 U.S.C. section 2308, et seq. Similarly, in plaintiff's fifth cause of action, plaintiff alleges, among other things, that he has suffered damages because TMA breached an implied warranty under the Federal Magnuson-Moss Warranty Act, 15 U.S.C. section 2301, et seq. The Magnuson-Moss Warranty Act (codified at 15 U.S.C. 2301 et seq.) is a federal statute that governs warranties on consumer products. Plaintiff's claims under the Magnuson-Moss Warranty Act are expressly created by a federal statute and thus arise under "the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Therefore, this Court has original jurisdiction over such claims.

9.     The court should exercise supplemental jurisdiction over the

3
**TOYOTA MOTOR NORTH AMERICA, INC.'s NOTICE OF REMOVAL TO FEDERAL COURT (INCLUDING CONSENT OF TMS AND NOTICE OF INTERESTED PARTIES)**

remaining claims, which are related to the same vehicle/warranty transaction, the same allegations of defects, and the same vehicle service/repair history as the Magnuson-Moss Act claims. *See* 28 U.S.C. § 1367(a); *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 165 (1997).

## THE NOTICE OF REMOVAL IS PROCEDURALLY CORRECT

10.   The Removal Venue Is Proper. Pursuant to 28 U.S.C. Section 1446(a), TMA files this Notice of Removal in the U.S. District Court for the Central District of California, Western Division. This venue is proper because the action is currently pending in the California Superior Court for the County of Los Angeles.

11.   The Removal Is Timely. Pursuant to 28 U.S.C. Section 1446(b), TMA files this Notice of Removal within thirty days of service of the First Amended Complaint and Summons to TMA. In *Destfino v. Reiswig*, 630 F.3d 952, 956 (9th Cir. 2011), the Ninth Circuit of the United States Court of Appeals held that "each defendant is entitled to thirty days to exercise his removal rights after being served." *Destfino*, 630 F.3d at 956. Plaintiff served TMA with the summons and first amended complaint on April 9, 2012. TMA has filed this notice of removal within thirty days after being served. TMA, therefore, has timely removed this action.

12.   TMA Has Sufficient Consent. As evidenced below, co-defendant TMS consents to the removal. TMA is not required to investigate the identity of the unnamed DOE defendants or to obtain their consent for removal. *See Necombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998); 28 U.S.C. § 1441(a).

13.   Notice To Plaintiff And The Superior Court. In accordance with 28 U.S.C. Section 1446(d), TMA will serve written notice of the filing of this Notice of Removal to Plaintiff and will also file, and serve to plaintiff, an appropriate

1    notice with the California Superior Court for the County of Los Angeles.

2

3                              **CONCLUSION**

4          For these reasons, this Court has federal question jurisdiction and TMA

5    requests that this Court proceed with this matter as if Plaintiff had originally filed

6    his Complaint in the U.S. District Court for the Central District of California,

7    Western Division.

8          Dated: May 9, 2012

9                                    BEATTY & MYERS, LLP

10

11          _____

12          SEAN D. BEATTY
            JOHN W. MYERS IV
13          Attorneys for defendants, Toyota Motor
            Sales, U.S.A., Inc. and Toyota Motor North
14          America, Inc.

15

16                      **CONSENT OF DEFENDANT TMS**

17          Through its counsel, below, Defendant TMS consents to this removal.

18   Dated:  May 9, 2012

19                                    BEATTY & MYERS, LLP

20

21          _____

22          SEAN D. BEATTY
            JOHN W. MYERS IV
23          Attorneys for defendants Toyota Motor Sales,
            U.S.A., Inc. and Toyota Motor North America,
24          Inc.

25

26

27

28

1

## NOTICE OF INTERESTED PARTIES

2

3        The undersigned, counsel of record for defendants Toyota Motor Sales,

4   U.S.A., Inc., and Toyota Motor North America, Inc. certifies that the following

5   listed party (or parties) may have a pecuniary interest in the outcome of this case.

6   These representations are made to enable the Court to evaluate possible

7   disqualification or recusal.

8        1.      Toyota Motor Sales, U.S.A., Inc.,

9        2.      Toyota Motor North America, Inc.

10       3.      Michael Houlf

11

12   Dated:  May 9, 2012

13

14

15                              BEATTY & MYERS, LLP

16

17                              _____

18                              SEAN D. BEATTY
                                JOHN W. MYERS IV
19                              Attorneys for defendants Toyota Motor Sales,
                                U.S.A., Inc. and Toyota Motor North America,
20                              Inc.

21

22

23

24

25

26

27

28

**TOYOTA MOTOR NORTH AMERICA, INC.'s NOTICE OF REMOVAL TO FEDERAL COURT**
**(INCLUDING CONSENT OF TMS AND NOTICE OF INTERESTED PARTIES)**

# EXHIBIT A

Todd M. Friedman, Esq.- State Bar #216752
Law Offices of Todd M. Friedman, P.C.
369 S. Doheny Dr. #415
Beverly Hills, CA 90211
(877) 206-4741
Attorney for Plaintiff, MICHAEL HOULF

FILED
SUPERIOR COURT OF CALIFORNIA
PLACER COUNTY

JUN 1 4 2010

EXECUTIVE OFFICER & CLERK
By M. Anderson, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF PLACER
## UNLIMITED JURISDICTION

| | |
|---|---|
| MICHAEL HOULF, | Case No.: **S CV 27280** |
| Plaintiff, | COMPLAINT |
| vs. | |
| TOYOTA MOTOR SALES USA, INC., | |
| Defendant | |

## COMPLAINT

NOW COMES the Plaintiff, MICHAEL HOULF by and through Plaintiff's attorneys,

LAW OFFICES OF TODD M. FRIEDMAN, P.C., and for Plaintiff's Complaint against

Manufacturer, TOYOTA MOTOR SALES USA, INC., alleges and affirmatively states as

follows:

## PARTIES

1.   Plaintiff, MICHAEL HOULF ("Plaintiff), is an individual who purchased subject

vehicle in the State of California.

2.   Manufacturer, TOYOTA MOTOR SALES USA, INC.

COMPLAINT

1   ("Manufacturer"), is a corporation Authorized to do business in the State of California and is

2   engaged in the manufacture, sale, and distribution of motor vehicles and related equipment and

3   services. Manufacturer is also in the business of marketing, supplying and selling written

4   warranties to the public at large through a system of authorized dealerships, including

5   MAGNUSSEN AUBURN TOYOTA ("Seller"). Manufacturer does business in all counties of

6   the State of California.

7                                              BACKGROUND

8          3.      On or about December 26, 2007, Plaintiff purchased from Seller a 2008 Toyota

9   Tundra 4 x 4 ("TUNDRA"), manufactured by Manufacturer, Vehicle Identification No.

10  5TFBV541X8X037523, for valuable consideration.

11         4.      The price of the TUNDRA, included sales tax, registration charges, document

12  fees and other collateral charges, such as bank and finance charges, totaling over $37,568.60.

13         5.      In consideration for the purchase of the TUNDRA, Manufacturer issued and

14  supplied to Plaintiff several written warranties, as well as other standard warranties fully outlined

15  in the Manufacturer's Warranty Booklet.

16         6.      On or about December 26, 2007, Plaintiff took possession of the TUNDRA and

17  shortly thereafter experienced the various defects listed below that substantially impair the use,

18  value and/or safety of the TUNDRA.

19         7.      The defects listed below violate the express written warranties issued to Plaintiff

20  by manufacturer, as well as the implied warranty of merchantability.

21         8.      Plaintiff brought the TUNDRA to Seller and/or other authorized service dealers of

22  manufacturer for various defects, including, but not limited to the following:

23                 a)   Defective accelerator;

24                 b)   Defective gas pedal; and

25                 c)   Any additional complaints made by our client, whether or not they are
                        contained in your company's records or on any repair orders.

COMPLAINT

9.    Plaintiff provided Manufacturer through Seller and/or other authorized dealers of Manufacturer sufficient opportunities to repair the TUNDRA.

10.   Manufacturer, through its authorized dealers was unable and/or failed to repair the TUNDRA within a reasonable number of attempts.

11.   Plaintiff justifiably lost confidence in the TUNDRA's reliability and said defects have substantially impaired the value of the TUNDRA to Plaintiff.

12.   Said defects could have not been discovered by Plaintiff prior to Plaintiff's acceptance of the TUNDRA.

13.   As a result of said defects, Plaintiff revoked acceptance of the TUNDRA in writing.

14.   At the time of revocation, the TUNDRA was in substantially the same condition as at delivery except for damage caused by its own defects and ordinary wear and tear.

15.   Manufacturer refused Plaintiff's demand for revocation and has refused to provide Plaintiff with the remedies Plaintiff is entitled upon revocation.

16.   The TUNDRA remains in a defective and unmerchantable condition, and continues to exhibit the above mentioned defects that substantially impair its use, value and/or safety.

17.   Plaintiff has and will continue to be financially damaged due to Manufacturer's failure to comply with the provisions of its express and implied warranties.

18.   Prior to filing this complaint, Plaintiff attempted to submit to Manufacturer's informal dispute resolution program and was unsatisfied with the results therein.

COUNT I
BREACH OF WRITTEN WARRANTY
PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT
MANUFACTURER

19.   Plaintiff realleges and incorporates by reference as fully set forth herein, paragraphs 1-18 of this Complaint.

COMPLAINT

20.     Plaintiff is a purchaser of a consumer product who received the TUNDRA during the duration of a written warranty period applicable to the TUNDRA and who is entitled by the terms of the written warranty to enforce against Manufacturer the obligations of said warranty.

21.     Manufacturer is a person engaged in the business of making a consumer product directly available to Plaintiff.

22.     Seller is an authorized dealership/agent of Manufacturer designed to perform repairs on vehicles under Manufacturer's automobile warranties.

23.     The Magnuson-Moss Warranty Act, Chapter 15 U.S.C.A., Section, 2301 et. Seq. ("Warranty Act") is applicable to Plaintiff's Complaint in that the TUNDRA was manufactured, sold and purchased after July 4, 1975, and costs in excess of ten dollars ($10.00).

24.     Plaintiff's purchase of the TUNDRA was accompanied by written factory warranties for any non-conformities or defects in materials or workmanship, comprising an undertaking in writing in connection with the purchase of the TUNDRA to repair the TUNDRA or take other remedial action free of charge to Plaintiff with respect to the TUNDRA in the event that the TUNDRA failed to meet the specifications set forth in said undertaking.

25.     Said warranties were the basis of the bargain of the contract between the Plaintiff and Manufacturer for the sale of the TUNDRA to Plaintiff.

26.     Said purchase of Plaintiff's TUNDRA was induced by, and Plaintiff relied upon, these written warranties.

27.     Plaintiff has met all of Plaintiff's obligations and preconditions as provided in the written warranties.

28.     As a direct and proximate result of Manufacturer's failure to comply with its express written warranties, Plaintiff has suffered damages and, in accordance with 15 U.S.C. § 2310(d), Plaintiff is entitled to bring suit for such damages and other equitable relief.

WHEREFORE, Plaintiff prays for judgment against Manufacturer as follows:

a.     Return of all monies paid or in the alternative applicable damages pursuant to section 2714 of the Commercial Code, and all incidental and consequential damages incurred;

b.     All reasonable attorneys' fees, witness fees and all court costs and other costs;

c.     Such other and further relief that the Court deems just and appropriate.

## COUNT II
### BREACH OF IMPLIED WARRANTY
### PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT
### MANUFACTURER

29.     Plaintiff realleges and incorporates by reference as through fully set forth herein, paragraphs 1-18 of this complaint.

30.     The TUNDRA purchased by Plaintiff was subject to an implied warranty of merchantability as defined in 15 U.S.C. § 2301(7) running from the Manufacturer to the intended consumer, Plaintiff herein.

31.     Manufacturer is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiff.

32.     Manufacturer is prohibited from disclaiming or modifying any implied warranty when making a written warranty to the consumer or when Manufacturer has entered into a contract in writing within ninety (90) days of purchase to perform services relating to the maintenance or repair of a motor vehicle.

33.     Pursuant to 15 U.S.C. § 2308, Plaintiff's TUNDRA was impliedly warranted to be substantially free of defects and non-conformities in both material and workmanship, and thereby fit for the ordinary purpose for which the TUNDRA was intended.

COMPLAINT

34.     The TUNDRA was warranted to pass without objection in the trade under the contract description, and was required to conform to the descriptions of the vehicle contained in the contracts and labels.

35.     The above described defects in the TUNDRA render the TUNDRA unfit for the ordinary and essential purpose for which the TUNDRA was intended.

36.     As a result of the breaches of implied warranty by Manufacturer, Plaintiff has suffered and continues to suffer various damages.

WHEREFORE, Plaintiff prays for judgment against Manufacturer as follows:

a.  Return of all monies paid or in the alternative applicable damages pursuant to section 2714 of the Commercial Code, and all incidental and consequential damages incurred;
b.  All reasonable attorneys' fees, witness fees and all court costs and other costs;
c.  Such other and further relief that the Court deems just and appropriate.

## COUNT III
## SONG --BEVERLY CONSUMER WARRANTY ACT

37.     Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-18 of this Complaint.

38.     Pursuant to Cal Civ. Code. § 1793.2, Plaintiff has presented the TUNDRA to Seller and/or other authorized service dealers of Manufacturer within the term of protection and have tendered the subject vehicle four (for the above-mentioned defects that substantially affect the use, value and safety of the TUNDRA.

39.     Manufacturer, through Seller and/or other authorized dealerships, have been unable to repair said defects in a reasonable number of attempts.

40.     Pursuant to Cal Civ. Code. § 1793.2, Plaintiff is entitled to a refund of the full purchase price of the vehicle, including all collateral charges and finance charges, and/or a replacement vehicle, plus all attorney fees and costs.

COMPLAINT

1    41.    Manufacturer has willfully violated the provisions of this act by knowing of its

2    obligations to refund or replace Plaintiff's vehicle, but failing to fulfill them.

3          WHEREFORE, Plaintiff prays for judgment against Manufacturer as follows:

4          a.    Return of the TUNDRA's purchase price and all incidental and
               consequential damages incurred by Plaintiff;
5          b.    Return of all finance charges incurred by Plaintiff for the TUNDRA;
6          c.    All reasonable attorneys' fees, witness fees, court costs and other fees
               incurred by Plaintiff; and
7          d.    A civil penalty pursuant to Cal. Civ. Code § 1794 (c).
           e.    Such other and further relief that this Court deems just and appropriate.
8
                        COUNT IV
9             SONG – BEVERLY CONSUMER WARRANTY ACT

10    41. Plaintiff realleges and incorporates by reference as though fully set forth herein,

11        paragraphs 1-18 of this Complaint.

12    42. The TUNDRA purchased by Plaintiff was subject to an implied warranty of

13        merchantability as defined in Cal. Civ. Code §1790 running from the Manufacturer to

14        the intended consumer, Plaintiff herein.

15    43. Manufacturer is a supplier of consumer goods as a person engaged in the business of

16    making a consumer product directly available to Plaintiff.

17
18    44. Manufacturer is prohibited from disclaiming or modifying any implied warranty

19    under Cal. Civ. Code §1790.

20    45. Pursuant to Cal. Civ. Code §1790, Plaintiff's TUNDRA was impliedly warranted to

21    be fit for the ordinary use for which the TUNDRA was intended.

22    46. The TUNDRA was warranted to pass without objection in the trade under the

23    contract description, and was required to conform to the descriptions of the vehicle contained in

24    the contracts and labels.

25

COMPLAINT

47. The above described defects in the TUNDRA caused it to fail to possess even the most basic degree of fitness for ordinary use.

48. As a result of the breaches of implied warranty by Manufacturer, Plaintiff has suffered and continues to suffer various damages.

WHEREFORE, Plaintiff prays for judgment against Manufacturer as follows:

    a.  Return of all monies paid or in the alternative applicable damages pursuant to section 2714 of the Commercial Code, and all incidental and consequential damages incurred;

    b.  All reasonable attorneys' fees, witness fees and all court costs and other costs;

    c.  Such other and further relief that the Court deems just and appropriate.

PLAINTIFF HEREBY REQUESTS A JURY TRIAL IN THIS MATTER.

Dated this June 9, 2010

Todd M. Friedman
Attorney for Plaintiff,
MICHAEL HOULF

# EXHIBIT B

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| e: 05/25/10 | | | DEPT. 322 |
|---|---|---|---|
| HONORABLE CARL J. WEST | JUDGE | A. LIM | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| C. PIEDRA, C.A. | Deputy Sheriff | R. RODRIGUEZ, CSR | Reporter |

| 2:30 pm | JCCP4621 | Plaintiff Counsel | MARK P. ROBINSON JR (X) TONY RACKAUCKAS (X) |
|---|---|---|---|
| | TOYOTA MOTOR CASES | Defendant Counsel | LISA M. GILFORD (X) JOHN D. ARYA (X) |

**NATURE OF PROCEEDINGS:**

PETITION FOR COORDINATION;

APPEARANCES CONTINUED FROM ABOVE:

| NICK SECORD | MARK V. BERRY |
|---|---|
| PAUL E. HEIDENREICH | IBIERE N. SECK |
| DAVID N. BARRY | DONALD G. LIDDY |
| ARMEN AKARAGIAN | GARO MARDIROSSIAN |
| THOMAS M. MURPHY | TIMOTHY G. BLOOD |
| RUSSELL A. GOLD | JOHN H. GOMEZ |
| TIMOTHY R. PESTOTNIK | DALE E. MOTLEY |
| JOHN W. MYERS IV | NIMISH R. DESAI |
| ROBERT W. BATES | DARREN O. AITKEN |
| PAUL G. SZUMIAK | DAVID M. ARBOGAST |
| CINDA SUE BEHRENS | JOHN P. KRISTENSEN |
| LARRY N. WILLIS | ROBERT L. REISINGER |
| ANNA S. MCLEAN | TAMAR G. ARMINAK |
| M. NICHOLAS NITA | ALEXIS GALINDO (COURTCALL) |

ORDER

By Order of the Chair of the Judicial Council this
Court was assigned as the Coordination Motion Judge
for the purpose of hearing the coordination petition
and, upon granting the petition, to make a
recommendation on the appropriate court site for
assignment of a coordination trial judge.

Page   1 of 10   DEPT. 322

MINUTES ENTERED
05/25/10
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 05/25/10                                                                        DEPT. 322

HONORABLE CARL J. WEST            JUDGE A. LIM                          DEPUTY CLERK

HONORABLE                         JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR

          C. PIEDRA, C.A.        Deputy Sheriff R. RODRIGUEZ, CSR          Reporter

2:30 pm  JCCP4621                          Plaintiff
                                           Counsel    MARK P. ROBINSON JR (X)
                                                      TONY RACKAUCKAS (X)
           TOYOTA  MOTOR  CASES           Defendant
                                           Counsel    LISA M. GILFORD (X)
                                                      JOHN D. ARYA (X)

**NATURE OF PROCEEDINGS:**

Matter is called for hearing.

The Court having reviewed and considered the joint
petition and all filings in response to the petition,
finds the cases subject to the petition are complex
cases within the meaning of California Rule of
Court, Rule 3.400, and that this is an appropriate
matter for coordination pursuant to Code of Civil
Procedure section 404 and California Rules of
Court, Rules 3.501, et seq., and that coordination of
the cases subject to the petition will further the
efficient management of the cases, the interests of
judicial economy, and will eliminate the risk of
inconsistent rulings on common issues of law and
fact present in all of the cases.

In granting this petition, Court is mindful of the
fact that there are personal injury and wrongful death
cases, consumer cases seeking restitutionary and
economic loss damages, and Lemon Law cases seeking
statutory damages. The Court therefore recommends that
in assigning these cases to a Coordination Trial Judge
consideration be given to establishing a separate
coordination proceeding for the personal injury and
wrongful death cases as they may be more efficiently
managed separate from economic loss and statutory
damages cases.  It is this Court's recommendation
that if a separate coordination proceeding is
established for the personal injury and wrongful
death cases, both coordination proceedings be

                    Page   2 of 10   DEPT. 322

                                         ┌─────────────────────────┐
                                         │ MINUTES ENTERED         │
                                         │ 05/25/10                │
                                         │ COUNTY CLERK            │
                                         └─────────────────────────┘

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| rE: 05/25/10 | | | DEPT. 322 |
|---|---|---|---|
| HONORABLE CARL J. WEST | JUDGE | A. LIM | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| C. PIEDRA, C.A. | Deputy Sheriff | R. RODRIGUEZ, CSR | Reporter |

| 2:30 pm | JCCP4621 | Plaintiff Counsel | MARK P. ROBINSON JR (X) TONY RACKAUCKAS (X) |
|---|---|---|---|
| | TOYOTA MOTOR CASES | Defendant Counsel | LISA M. GILFORD (X) JOHN D. ARYA (X) |

NATURE OF PROCEEDINGS:

assigned to the same Coordination Trial Judge.

The Court recommends that a coordination trial judge
be assigned from the Complex Litigation Panel of the
Orange County Superior Court. This recommendation is
made in part on the fact that the Federal Multi
District Litigation (MDL) involving similar claims
against Toyota is venued before Judge Selna in the
Southern Division of the U.S. District Court for the
Central District of California which is located in
close proximity to the Complex Court facility of the
Orange County Superior Court.

The Court designates the Fourth Appellate District as
the deisgnated district of the Court of Appeal to hear
appeals in the coordinated proceedings.

All coordinated cases shall be stayed pending the
assignment of a Coordination Trial Judge.

Actions subject to this order include the following
cases:

Class Action Cases

Schreiber, et al. v. Toyota Motor Sales et al.
Superior Court of California
County of Orange Case No. 30-2010-00352242

Grant v. Toyota Motor Sales et al

MINUTES ENTERED
05/25/10
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| ᴛE: 05/25/10 | | **DEPT.** 322 |
| HONORABLE CARL J. WEST   JUDGE | A. LIM | DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| C. PIEDRA, C.A.   Deputy Sheriff | R. RODRIGUEZ, CSR | Reporter |

| 2:30 pm | JCCP4621 | | Plaintiff Counsel | MARK P. ROBINSON JR (X) |
|---|---|---|---|---|
| | | | | TONY RACKAUCKAS (X) |
| | TOYOTA MOTOR CASES | | Defendant Counsel | LISA M. GILFORD (X) |
| | | | | JOHN D. ARYA (X) |

**NATURE OF PROCEEDINGS:**

Superior Court of California
County of Los Angeles Case No. BC432706

Abrams v. Toyota Motor Sales et al
Superior Court of California
County of Los Angeles Case No. BC432811

Pfohlman v. Toyota Motor Sales et al
Superior Court of California
County of Los Angeles Case No. BC432012

Government Action

People of the State of California v. Toyota Motor
Sales, et al.
County of Orange Case No. 30-2010-00352900-CU-BT-CXC.

Individual Product Liability Cases

Lin v. Toyota Motor North America, et al
Superior Court of California
County of Los Angeles Case No. BC431860

Flores v. Toyota Motor Sales et al
Superior Court of California
County of Contra Costa Case No. C-10-00681

Saylor v. Toyota Motor Sales et al
Superior Court of California
County of San Diego No. 37-2010-00086718-CU-PL-CTL

                    Page  4 of 10   DEPT. 322

MINUTES ENTERED
05/25/10
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

ATE: 05/25/10                                                              DEPT. 322

HONORABLE CARL J. WEST          JUDGE    A. LIM           DEPUTY CLERK

HONORABLE                JUDGE PRO TEM                    ELECTRONIC RECORDING MONITOR

         C. PIEDRA, C.A.   Deputy Sheriff   R. RODRIGUEZ, CSR          Reporter

---

2:30 pm | JCCP4621

                                   Plaintiff
                                   Counsel    MARK P. ROBINSON JR (X)
                                              TONY RACKAUCKAS (X)
        TOYOTA   MOTOR   CASES     Defendant
                                   Counsel    LISA M. GILFORD (X)
                                              JOHN D. ARYA (X)

---

NATURE OF PROCEEDINGS:

Bates v. Toyota Motor Corporation, et al.
Superior Court of California
County of Santa Clara Case No. 109CV158872

Ezal v. Martin Resorts, Inc.
Superior Court of California
County of San Luis Obispo Case No. CV090425

Hawatmeh v. Toyota Motor Sales et al
Superior Court of California
County of Los Angeles Case No. BC420298

Hewitt v. Toyota Motor Sales et al
Superior Court of California
County of Los Angeles Case No. BC428326

Kiss v. Toyota Motor Sales et al
Superior Court of California
County of Orange Case No. 30-2009 00126352

Rodriguez v. County of Kern, et al
Superior Court of California
County of Kern Case No. 1500-CV-269506SPC

Uno v. Toyota Motor Sales et al
Superior Court of California
County of Los Angeles Case No. KC057888

Grainger v. Toyota Motor Sales et al

                    Page   5 of 10   DEPT. 322

┌─────────────────────┐
│ MINUTES ENTERED     │
│ 05/25/10            │
│ COUNTY CLERK        │
└─────────────────────┘

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| ᴀᴛᴇ: 05/25/10 | | DEPT. 322 |
| HONORABLE CARL J. WEST                JUDGE | A. LIM | DEPUTY CLERK |
| HONORABLE                        JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| C. PIEDRA, C.A.        Deputy Sheriff | R. RODRIGUEZ, CSR | Reporter |

| | | |
|---|---|---|
| 2:30 pm | JCCP4621 | Plaintiff Counsel   MARK P. ROBINSON JR (X) |
| | | TONY RACKAUCKAS (X) |
| | TOYOTA  MOTOR  CASES | Defendant Counsel   LISA M. GILFORD (X) |
| | | JOHN D. ARYA (X) |

**NATURE OF PROCEEDINGS:**

Superior Court of California
County of Los Angeles Case No. BC434646

Campbell v. Toyota Motor North America, et al
Superior Court of California
County of Los Angeles Case No. SC107584

Fong v. Toyota Motor Sales et al
Superior Court of California
County of Contra Costa Case No. C 10-00520

Esfandiari v. Toyota Motor North America et al
Superior Court of California
County of Orange Case No. 30-2009-00333285

Synn v. Toyota Motor Sales et al
Superior Court of California
County of Los Angeles Case No. SC107169

Edwards v. Toyota Motor Corporation, et al
Superior Court of California
County of Los Angeles Case No. BC435265

Craig v. Toyota Motor North America, et al
Superior Court of California
County of Los Angeles Case No. BC438366

Kunit v. Toyota Motor North America, et al
Superior Court of California
County of Los Angeles Case No. BC438370

Page  6 of 10    DEPT. 322

MINUTES ENTERED
05/25/10
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| ATE: 05/25/10 | | | DEPT. 322 |
|---|---|---|---|
| HONORABLE CARL J. WEST | JUDGE | A. LIM | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| C. PIEDRA, C.A. | Deputy Sheriff | R. RODRIGUEZ, CSR | Reporter |

| 2:30 pm | JCCP4621 | Plaintiff Counsel | MARK P. ROBINSON JR (X) |
|---|---|---|---|
| | | | TONY RACKAUCKAS (X) |
| | TOYOTA   MOTOR   CASES | Defendant Counsel | LISA M. GILFORD (X) |
| | | | JOHN D. ARYA (X) |

**NATURE OF PROCEEDINGS:**

Sossikian v. Toyota Motor North America, et al
Superior Court of California
County of Los Angeles Case No. BC438365

Casco v. Toyota Motor North America, et al
Superior Court of California
County of Los Angeles Case No. BC435986

Lemon Law Cases

Gonzales v. Toyota Motor Sales, et al
Superior Court of California
County of Stanislaus Case No. 651403

Kennedy v. Toyota Motor Sales, et al
Superior Court of California
County of Orange Case No. 30-2010-00342998

Lytle v. Toyota Motor Sales et al
Superior Court of California
County of Los Angeles Case No. BC431250

Martinez-Gomez v. Toyota Motor Sales et al
Superior Court of California
County of Yolo Case No. CV 10-356

Walker v. Toyota Motor Sales et al
Superior Court of California
County of Sacramento Case No. 34-2010-00070734

                    Page   7 of 10    DEPT. 322

| MINUTES ENTERED |
|---|
| 05/25/10 |
| COUNTY CLERK |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

ATE: 05/25/10                                                        **DEPT.** 322

HONORABLE CARL J. WEST          JUDGE | A. LIM            DEPUTY CLERK

HONORABLE                       JUDGE PRO TEM            ELECTRONIC RECORDING MONITOR

C. PIEDRA, C.A.          Deputy Sheriff | R. RODRIGUEZ, CSR          Reporter

2:30 pm | JCCP4621                       Plaintiff
                                         Counsel    MARK P. ROBINSON JR (X)
                                                    TONY RACKAUCKAS (X)
         TOYOTA   MOTOR   CASES          Defendant
                                         Counsel    LISA M. GILFORD (X)
                                                    JOHN D. ARYA (X)

**NATURE OF PROCEEDINGS:**

Austin v. Toyota Motor Sales et al
Superior Court of California
County of Stanislaus Case No. 652113

Berberian v. Toyota Motor Sales et al
Superior Court of California
County of Los Angeles Case No. BC435251

Brown v. Toyota Motor Sales et al
Superior Court of California
County of San Diego Case No. 37-2010-00075110-CU-BC-SC

Diaz v. Toyota Motor Sales et al
Superior Court of California
County of Riverside Case No. RIC 10006201

Jex v. Toyota Motor Sales et al
Superior Court of California
County of San Diego Case No 37-2010-00088622-CU-NP-CTL

Kimari v. Toyota Motor Sales et al
Superior Court of California
County of San Diego Case No. 37-2010-00065953

Ornelas v. Toyota Motor Sales et al
Superior Court of California
County of Riverside Case No. RIC 10005735

Vasquez v. Toyota Motor Sales et al

Page   8 of 10   DEPT. 322

**MINUTES ENTERED**
05/25/10
**COUNTY CLERK**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 05/25/10                                                DEPT. 322

HONORABLE  CARL J. WEST          JUDGE  A. LIM              DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR

        C. PIEDRA, C.A.      Deputy Sheriff  R. RODRIGUEZ, CSR         Reporter

| | | |
|---|---|---|
| 2:30 pm | JCCP4621 | Plaintiff<br>Counsel   MARK P. ROBINSON JR (X)<br>         TONY RACKAUCKAS (X) |
| | TOYOTA   MOTOR   CASES | Defendant<br>Counsel   LISA M. GILFORD (X)<br>         JOHN D. ARYA (X) |

**NATURE OF PROCEEDINGS:**

Superior Court of California
County of Riverside Case No. RIC 10004041

Herman v. Toyota Motor Sales et al
Superior Court of California
County of San Diego Case No. 37-2010-00053388

Dreyer v. Toyota Motor Sales et al
Superior Court of California
County of El Dorado Case No. PC 20100224

Counsel for petitioner is to give notice and to
prepare a formal order for coordination consistent
with the findings of the Court as set forth in this
minute order.

            CLERK'S CERTIFICATE OF MAILING/
              NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
05/26/10 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

                Page   9 of 10   DEPT. 322

                                        ┌─────────────────────┐
                                        │ **MINUTES ENTERED**  │
                                        │ 05/25/10             │
                                        │ **COUNTY CLERK**     │
                                        └─────────────────────┘

1    LISA GILFORD (SBN 171641)
     JOHN D. ARYA (SBN 156108)
2    KYLE OSTERGARD (SBN 178129)
     ALSTON + BIRD LLP
3    333 South Hope Street, Sixteenth Floor
     Los Angeles, California 90071
4    Telephone: (213) 576-1000
     Facsimile: (213) 576-1100
5    Email: lisa.gilford@alston.com
           john.arya@alston.com
6           kyle.ostergard@alston.com

7

8    VINCENT GALVIN, JR. (SBN 104448)
     MARK V. BERRY (SBN 70162)
9    BOWMAN & BROOKE LLP
     1741 Technology Drive, Suite 200
     San Jose, California 95110-1355
10   Telephone: (408) 279-5393
     Facsimile: (408) 279-5845
11   Email: vincent.galvin@bowmanandbrooke.com
           mark.berry@lax.bowmanandbrooke.com
12

13   **Counsel for the Toyota Defendants**

14

15         SUPERIOR COURT OF THE STATE OF CALIFORNIA

16             FOR THE COUNTY OF LOS ANGELES

ORIGINAL FILED

OCT 14 2010

LOS ANGELES
SUPERIOR COURT

| | |
|---|---|
| Coordination Proceeding Special Title Rule 1550(B) | JCCP No. 4621 |
| | Complex Litigation Program |
| TOYOTA MOTOR CASES | NOTICE OF RULING RE MOTIONS TO ADD-ON CERTAIN LEMON LAW ACTIONS |
| | Coord. Trial Judge: Hon. Anthony J. Mohr<br>Department: 309 |

1   TO THIS HONORABLE COURT, ALL PARTIES AND TO THEIR

2   ATTORNEYS OF RECORD:

3       PLEASE TAKE NOTICE that the Toyota Defendants' Motions to Include

4   Certain "Add-On" Cases in the Coordinated Proceeding, dated July 28 and September

5   2, 2010 ("Toyota's Add-On Motions"), were heard by the Court on September 20, 2010

6   at 3:00 p.m., at a Joint Status Conference in the JCCP No. 4621 and MDL No. 2151

7   proceedings, in Courtroom 10-C of the United States District Court for the Central

8   District of California – Southern Division, located at 411 W. Fourth Street, Santa Ana,

9   California 92701.

10      The Court granted the request to add-on the following lemon law actions to the

11  JCCP:

12      1.   *Cifuentes, et al. v. Toyota Motor Sales, U.S.A., Inc.*, Los Angeles County

13           Superior Court Case No. BC440618.

14      2.   *Healey v. Toyota Motor Sales, U.S.A., Inc., et al.*, Alameda County

15           Superior Court Case No. RG10526284.

16      3.   *Houlf v. Toyota Motor Sales USA, Inc.*, Placer County Superior Court

17           Case No. S CV 27280.

18      4.   *Roberts v. Toyota Motor Sales, U.S.A., Inc., et al.*, Ventura County

19           Superior Court Case No. 56-2010-00374229-CU-BC-SIM.

20      The Court took under further submission whether to add-on the following lemon

21  law actions included in Toyota's Add-On Motions but objected to by plaintiffs'

22  counsel:

23      1.   *Dunn v. Toyota Motor Sales, U.S.A., Inc.*, Los Angeles County Superior

24           Court Case No. SC108128.

25      2.   *Ivy v. Toyota Motor Sales, U.S.A., Inc.*, Merced County Superior Court

26           Case No. CV-00976.

27      3.   *Benecke v. Toyota Motor Sales, U.S.A., Inc.*, Los Angeles County

28           Superior Court Case No. TC 023830.

1

JCCP No. 4621

NOTICE OF RULING GRANTING MOTION TO
ADD-ON CERTAIN LEMON LAW ACTIONS

1        4.    *Carvalho v. Toyota Motor Sales, U.S.A., Inc.*, San Diego County Superior

2    Court Case No. 37-2010-00092130-CU-BC-CTL.

3        5.    *Foster-Bryant v. Toyota Motor Sales, USA, Inc.*, Los Angeles County

4    Superior Court Case No. BC433247.[1]

5        In a minute order dated October 5, 2010 ("October 5th Order"), the Court added

6    the objected-to lemon law actions to the JCCP and declared them not complex at this

7    time.

8        A true and correct copy of the October 5th Order is attached hereto.

9                        Respectfully submitted,

10   Dated: October 14, 2010    By: _____

                                        Kyle Ostergard

11

12   LISA GILFORD (SBN 171641)
    JOHN D. ARYA (SBN 156108)

13   KYLE OSTERGARD (SBN 178129)
    **ALSTON + BIRD LLP**

14   333 South Hope Street, Sixteenth Floor
    Los Angeles, California 90071

15   Telephone:  (213) 576-1000
    Facsimile:  (213) 576-1100

16   Email: lisa.gilford@alston.com
            john.arya@alston.com

17               kyle.ostergard@alston.com

18   VINCENT GALVIN, JR. (SBN 104448)
    MARK V. BERRY (SBN 70162)

19   **BOWMAN & BROOKE LLP**
    1741 Technology Drive, Suite 200

20   San Jose, California 95110-1355
    Telephone: (408) 279-5393

21   Facsimile: (408) 279-5845
    Email: vincent.galvin@bowmanandbrooke.com

22              mark.berry@lax.bowmanandbrooke.com

23   **Counsel for the Toyota Defendants**

24

25

26

27   _____

28   [1] It appears that the *Foster-Bryant* action was omitted from the October 5, 2010 minute order. Plaintiffs' add-on opposition was filed on August 25, 2010, in the JCCP. Toyota assumes this was inadvertent, and that the case is deemed not complex and added on and coordinated into JCCP No. 4621.

                                  2                        JCCP No. 4621

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 10/05/10 | DEPT. 309 |

| | | |
|---|---|---|
| HONORABLE Anthony J. Mohr | JUDGE | M. CERVANTES        DEPUTY CLERK |
| | | M. RODRIGUEZ, Courtroom Assistant |
| HONORABLE | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| 8 | | |
| NONE | Deputy Sheriff | NONE        Reporter |

| | |
|---|---|
| JCCP4621 | Plaintiff Counsel |
| Coordination Proceedings Special Title Rule (1550(b)) TOYOTA MOTOR CASES | Defendant Counsel |
| 170.6 JUDGE HIGHBERGER (PLTF) 170.6 JUDGE ANN JONES (DEFT) | NO APPEARANCES |

NATURE OF PROCEEDINGS:

RULING ON MATTER TAKEN UNDER SUBMISSION ON
SEPTEMBER 20, 2010

In this matter heretofore taken under submission on
September 20, 2010, the court now issues its ruling
as follows.

The folliwng Lemon Law cases are added to Judicial
Council Coordinated Proceeding No. 4621:

Los Angeles Superior Court Case No. SC108128
Dunn v. Toyota Motor Sales, U.S.A., Inc.

Merced County Superior Court Case No. CV000976
Ivy v. Toyota Motor Sales, U.S.A., Inc.

Los Angeles Superior Court Case No. TC023830
Benecke v. Toyota Motor Sales, U.S.A., Inc.,

San Diego County Superior Court Case No. 37-2010.
00092130-CU-BC-CTL.
Carvalho v. Toyota Motor Sales, U.S.A., Inc.

The cases are declared not complex at this time.
The Court grants leave for each party to take one
deposition and serve 35 interrogatories, 35 requests
for admissions of facts, 35 requests for admissions of
genuiness of documents, and 35 requests for production
of documents and other things for each side.  Leave of

Page   1 of   4   DEPT. 309

| MINUTES ENTERED |
|---|
| 10/05/10 |
| COUNTY CLERK |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 10/05/10                                                    DEPT. 309

HONORABLE Anthony J. Mohr          JUDGE   M. CERVANTES          DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM   M. RODRIGUEZ, Courtroom Assistant
8                                                          ELECTRONIC RECORDING MONITOR

           NONE              Deputy Sheriff  NONE                  Reporter

| JCCP4621 | Plaintiff Counsel | |
| Coordination Proceedings Special Title Rule (1550(b)) TOYOTA MOTOR CASES | Defendant Counsel | |
| 170.6 JUDGE HIGHBERGER (PLTF) 170.6 JUDGE ANN JONES (DEFT) | NO APPEARANCES | |

NATURE OF PROCEEDINGS:

of court will be required, by way of a noticed motion, for any other discovery.

The Lemon Law cases previously added on will remain in the coordination proceeding.

The same discovery orders announced above pertain to these cases. Should any of the Lemon Law plaintiffs so desire, the court will appoint a person representing one or more of the Lemon Law plaintiffs to fill the vacancy on the Plaintiffs' steering committee. That attorney is free to attend committee meetings by telephone should he or she wish to do so.

Unless otherwise directed by the court, counsel for the Lemon Law plaintiffs may, if they wish, make telephonic appearances at future status conferences and other hearings.

Counsel for Defendants Toyota Motor Sales, U.S.A., Inc.; Toyota Motor North America, Inc.; and Toyota Motor Manufacturing, California, Inc., shall give notice.

            CLERK'S CERTIFICATE OF MAILING/
               NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served Notice of Entry of the above minute order of

            Page    2 of    4    DEPT. 309

MINUTES ENTERED
10/05/10
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 10/05/10 | DEPT. 309 |
| HONORABLE Anthony J. Mohr        JUDGE | M. CERVANTES        DEPUTY CLERK |
| | M. RODRIGUEZ, Courtroom Assistant |
| HONORABLE                JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| 8 | |
| NONE                Deputy Sheriff | NONE                Reporter |

| | |
|---|---|
| JCCP4621 | Plaintiff |
| | Counsel |
| Coordination Proceedings | |
| Special Title Rule (1550(b)) | Defendant |
| TOYOTA MOTOR CASES | Counsel |
| | |
| 170.6 JUDGE HIGHBERGER (PLTF) | NO APPEARANCES |
| 170.6 JUDGE ANN JONES (DEFT) | |

NATURE OF PROCEEDINGS:

10/05/10 upon each party or counsel named below by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original entered herein in a separate sealed envelope for each, addressed as shown below with the postage thereon fully prepaid.

Date:  October 5, 2010

John A. Clarke, Executive Officer/Clerk


By: _____
         M. Cervantes


Lisa Gilford
John D. Arya
Kyle Ostergard
ALSTON + BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA  90071


Judicial Council of California
Administrative Office of the Courts
Attn:  Coordination Attorney
455 Golden Gate Avenue
San Francisco, CA  94102-3660


                    Page  3 of  4   DEPT. 309

| |
|---|
| MINUTES ENTERED |
| 10/05/10 |
| COUNTY CLERK |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 10/05/10

DEPT. 309

HONORABLE Anthony J. Mohr          JUDGE    M. CERVANTES        DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM   M. RODRIGUEZ, Courtroom Assistant
8                                                        ELECTRONIC RECORDING MONITOR

NONE              Deputy Sheriff   NONE              Reporter

| JCCP4621 | Plaintiff Counsel |
| Coordination Proceedings Special Title Rule (1550(b)) TOYOTA  MOTOR  CASES | Defendant Counsel |
| 170.6 JUDGE HIGHBERGER (PLTF) 170.6 JUDGE ANN JONES (DEFT) | NO APPEARANCES |

NATURE OF PROCEEDINGS:

MR. STEPHEN THUNBERG
Executive Officer
Superior Court of California
County San Diego
220 West Broadway
San Diego, CA 92101


MS. KATHLEEN GOETSCH
Court Executive Officer
Superior Court of California
County of Merced
2260 N Street
Merced, CA 95340-3744

Page    4 of    4    DEPT. 309

MINUTES ENTERED
10/05/10
COUNTY CLERK

# EXHIBIT C

1    STRANGE & CARPENTER
     BRIAN R. STRANGE (SBN 103252)
2    GRETCHEN CARPENTER (SBN 180525)
     JOHN P. KRISTENSEN (SBN 224132)
3    12100 Wilshire Blvd., Suite 1900
     Los Angeles, CA 90025
4    Tele: (310) 207-5055; Fax: (310) 826-3210
     lacounsel@earthlink.net
5    gcarpenter@strangeandcarpenter.com
     jkristensen@strangeandcarpenter.com
6
     BLOOD HURST & O'REARDON, LLP
7    TIMOTHY G. BLOOD (149343)
     THOMAS J. O'REARDON II (247952)
8    PAULA M. ROACH (254142)
     600 B Street, Suite 1550
9    San Diego, CA 92101
     Telephone: 619/338-1100
10   619/338-1101 (fax)
     tblood@bholaw.com
11   toreardon@bholaw.com
     proach@bholaw.com
12
     Attorneys for Plaintiff
13
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
14
              COUNTY OF LOS ANGELES – CENTRAL CIVIL WEST
15
     **Coordination Proceeding,**          )   Case No. : JCCP 4621
16   **Special Title (Rule 3.550)**        )
                                           )   *Houlf v. Toyota Motor Sales, U.S.A., Inc.,*
17   **TOYOTA MOTOR CASES**                )   Placer County Superior Court
                                           )   Case No. S CV 27280
18   MICHAEL HOULF,                        )
                                           )   **NOTICE OF RULING & NOTICE OF**
19                                         )   **FURTHER STATUS CONFERENCE**
                        Plaintiff,         )
20   vs.                                   )   Date:   December 13, 2011
                                           )   Time:   9:00 a.m.
21   TOYOTA MOTOR SALES, U.S.A., INC.;     )   Dept.:  309
                                           )
22                                         )   **Further Status Conference**
                                           )   Date:   January 6, 2011
23                      Defendants.        )   Time:   2:15 p.m.
                                           )   Dept.:  309
24                                         )
                                           )
25                                         )
                                           )
26                                         )
                                           )
27
28
─────────────────────────────────────────────────────────
              NOTICE OF RULING & NOTICE OF FURTHER STATUS CONFERENCE
                                     -1-

1   **TO THIS HONORABLE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF**

2   **RECORD:**

3        On Tuesday, December 13, 2011, at 9:00 a.m. in Department 309 before the Honorable

4   Anthony J. Mohr of the Los Angeles Superior Court – Central Civil West, located at 600

5   South Commonwealth Avenue, Los Angeles, California 90005, hearings occurred in the

6   above-referenced Judicial Council Coordinated Proceedings ("JCCP") – Toyota Motor Cases.

7   Brian R. Strange, Timothy Blood, Scot Wilson, John Kristensen, Todd Walburg and Moses

8   Lebovits appeared on behalf of Plaintiffs.  Thomas Nolan, Stephen Robinson, John Arya,

9   Mark Berry, Anne Hanna and Sean D. Beatty appeared on behalf of the Toyota Defendants.

10   The Court made the following rulings:

11        •  The Motion for Leave to File an Amended Pleading in *Houlf v. Toyota Motor*

12           *Sales, U.S.A., Inc.* was granted.   Plaintiff shall have leave to file a further

13           amended Complaint if necessary in light of the Court's comments at the

14           hearing.   Toyota will have 30 days to respond upon receipt of the amended

15           Complaint;

16        •  A telephonic status conference with lead counsel was scheduled for Tuesday

17           December 21, 2011 at 11:00 a.m., to discuss the Buyback vehicles.  Strange &

18           Carpenter will provide counsel with the call in numbers;

19        •  A Further Status Conference is scheduled for Friday January 6, 2012 at 2:15

20           p.m. in the above-referenced courtroom;

21        •  Plaintiffs were ordered to give notice.

22   Dated:  January 5, 2012                         STRANGE & CARPENTER

23

24                                      /s/

25                              Brian R. Strange

                             John P. Kristensen

26                              Attorneys for Plaintiff

27

28

---

**PROOF OF SERVICE**
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

  I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:

  12100 Wilshire Boulevard, Suite 1900, Los Angeles, California  90025

  On January 6, 2012, I served the forgoing document, described as:

**NOTICE OF RULING & NOTICE OF FURTHER STATUS CONFERENCE**

[ x ]  by placing  [ ]  the original  [ x ] **via electronic transmission** addressed as follows: See Service List

[X]    **VIA ELECTRONIC TRANSMISSION TO CASE ANYWHERE AT WWW.CASEANYWHERE.COM**

[ ]    **VIA ELECTRONIC MAIL**

[ ]  I deposited such an envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[X]  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **BY PERSONAL SERVICE**

  I delivered such envelope by hand to the addressee.
  Executed on January 6, 2012, at Los Angeles, California.

[ X ]    **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

  _____
  Gregory Tatum

# EXHIBIT D

1   STRANGE & CARPENTER
     BRIAN R. STRANGE (103252)
2   GRETCHEN CARPENTER (180525)
     JOHN P. KRISTENSEN (224132)
3   12100 Wilshire Blvd., Suite 1900
     Los Angeles, CA 90025
4   Tele:  (310) 207-5055; Fax: (310) 826-3210
     lacounsel@earthlink.net
5   gcarpenter@strangeandcarpenter.com
     jkristensen@strangeandcarpenter.com
6   BLOOD HURST & O'REARDON, LLP
     TIMOTHY G. BLOOD (149343)
7   THOMAS J. O'REARDON II (247952)
     PAULA M. ROACH (254142)
8   600 B Street, Suite 1550
     San Diego, CA  92101
9   Telephone: 619/338-1100
     619/338-1101 (fax)
10  tblood@bholaw.com
     toreardon@bholaw.com
11  proach@bholaw.com

12  Attorneys for Plaintiff

13

14          SUPERIOR COURT OF THE STATE OF CALIFORNIA

15       COUNTY OF LOS ANGELES – CENTRAL CIVIL WEST

16  **Coordination Proceeding,**     ) Case No. : JCCP 4621
     **Special Title (Rule 3.550)**   )
17                                     ) *Houlf v. Toyota Motor Sales, U.S.A., Inc.,*
     **TOYOTA MOTOR CASES**          ) Placer County Superior Court
18                                     ) Case No. S CV 27280
     MICHAEL HOULF,                    )
19                                     )
                                        ) **PROOF OF PERSONAL SERVICE OF**
20              Plaintiff,              ) **SUMMONS AND COMPLAINT ON**
     vs.                               ) **DEFENDANT TOYOTA MOTOR**
21                                     ) **NORTH AMERICA, INC.**
     TOYOTA MOTOR NORTH AMERICA,       )
22  INC.; TOYOTA MOTOR SALES, U.S.A.,  )
     INC.; and DOES 1 through 10, inclusive,  )
23                                     )
                                        )
24                                     )
                                        )
25          Defendants.                )
                                        )
26  _____ )

27

28

00038168                              1                    Case No. : JCCP 4621
     **PROOF OF PERSONAL SERVICE OF SUMMONS AND COMPLAINT ON DEFENDANT TOYOTA**
                        **MOTOR NORTH AMERICA, INC.**

InswDve
5-9-12

POS-010

| ATTORNEY OF PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

BRIAN R. STRANGE                                        103252
STRANGE & CARPENTER
12100 WILSHIRE BLVD., SUITE 1900
LOS ANGELES, CA 90025
  TELEPHONE: (310) 207-5055
ATTORNEY FOR:
  L.A. SUPERIOR COURT/ CENTRAL LIMITED/UNLIMITED
  STREET ADDRESS: per rule 2.150 (a)(8):
  MAILING ADDRESS: the address of the court is not required
CITY AND ZIP CODE:
  BRANCH NAME:

| | | |
|---|---|---|
| Plaintiff | HOULF | CASE NUMBER: |
| Defendant | TOYOTA MOTOR NORTH AMERICA, INC. | JCCP4621 |
| | | Clt. Ref. or File No.: |
| | PROOF OF SERVICE OF SUMMONS | HOULF |

(Separate proof of service is required for each party served.)

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
     SUMMONS; FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL; DECLARATION OF
     HOULF; NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE; ADR PACKAGE

3.    a.[XX] Party served
           TOYOTA MOTOR NORTH AMERICA, INC.

      b.[XX] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not
             a person under item 5b on whom substituted service was made) (specify name and relationship to the party
             named in item 3a):
             CT CORP., AUTHORIZED AGENT, MARGARET WILSON

4. Address where the party was served: 818 W. SEVENTH ST. STE 200
                                        LOS ANGELES CA 90017

5. I served the party (check proper box)
     a.[XX] by personal service. I personally delivered the documents list in item 2 to the party or person authorized
            to receive service of process for the party (1) on (date): 04/09/12 (2) at (time): 9:50 am.

          (4) [___ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be
                  served at the place where the copies were left (Code Civ. Proc., 415.20). I mailed the documents
                  on (date):          from (city):          or [__] a declaration of mailing is attached.
          (5) [___ I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

| | | |
|---|---|---|
| Computer-generated form | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, 417.10 |
| Judicial Council of California | | |
| POS-010 (Rev. January 1, 2007) | GO: 11 narineh | |

AX0211-12483532

| | | CASE NUMBER: |
|---|---|---|
| Plaintiff | HOULF | |
| Defendant | TOYOTA MOTOR NORTH AMERICA, INC. | JCCP4621 |

    c. [___] by mail and acknowledgment of receipt of service, I mailed the documents listed
          in item 2 to the party, to the address shown in Item 4, by first-class mail,
          postage prepaid.

          (1) on (date):          (2) from (city):
          (3) [___] with two copies of the Notice and Acknowledgment of Receipt (form 982(a)(4)
              and a postage paid return envelope addressed to me.  (Attach completed
              Notice and Acknowledgment of Receipt (form 982(a)(4).) (Code of Civ.
              Proc., 415.30).)

          (4) [___] to an address outside California with return receipt requested.
              (Code Civ. Proc., 415.40)
    d. [___] by other means specify means of service and authorizing code section):

6. The "Notice to the Person Served" (on the summons) was completed as follows:
    a. [___] as an individual defendant.
    b. [___] as the person sued under the fictitious name of (specify):

    c. [___] as occupant/tenant.
    d. [XX] on behalf of:
          TOYOTA MOTOR NORTH AMERICA, INC.

        under the following Code of Civil Procedure section:
        [XX] CCP 416.10 (corporation)        [___] 416.60 (minor)
        [___] 416.20 (defunct corporation)      [___] 416.70 (ward or conservatee)
        [___] 416.30 (joint stock or company association)  [___] 416.90 (authorized person)
        [___] 416.40 (association or partnership)   [___] 415.46 (occupant/tenant)
        [___] 416.50 (public entity)         [___] other:
        [___] CCP 415.95 (business organization, form unknown)

7. Person who served papers
    a. Name: L. GARCIA
    b. Address: 7124 Owensmouth Ave., #106, Canoga Park CA 91303
    c. Telephone number: (213) 928-7247
    d. The fee for service was: $    57.95  (recoverable under CCP1033.5(a)(4)(B))
    e. I am:
        (1) [___] not a registered California process server.
        (2) [___] exempt from registration under Business and Professions Code
            Section 22350(b).
        (3) [XX] registered California process server:
            (i) [___] Owner  [XX] Employee  [___] Independent contractor.
            (ii) Registration No.: 3644
            (iii) County: LOS ANGELES

8. [XX] I declare under penalty of perjury under the laws of the State of California that
      the foregoing is true and correct.
      or
9. [___] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 04/10/12

L. GARCIA
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)          (SIGNATURE)

Page 2 of 2

| | | |
|---|---|---|
| Computer-generated form | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, 417.10 |
| Judicial Council of California | | |
| POS-010 (Rev. January 1, 2007)  GO: 11 | | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### PROOF OF SERVICE
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:

12100 Wilshire Boulevard, Suite 1900, Los Angeles, California  90025

On April 18, 2012, I served the forgoing document, described as:

**PROOF OF PERSONAL SERVICE OF SUMMONS AND COMPLAINT ON DEFENDANT TOYOTA MOTOR NORTH AMERICA, INC.**

[ x ]  by placing  [ ]  the original  **[ x ] via electronic transmission** addressed as follows: See Service List

[X]      **VIA ELECTRONIC TRANSMISSION TO CASE ANYWHERE AT WWW.CASEANYWHERE.COM**

[ ]     **VIA ELECTRONIC MAIL**

[ ]  I deposited such an envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[X]  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]  **BY PERSONAL SERVICE**

I delivered such envelope by hand to the addressee.
Executed on April 18, 2012 at Los Angeles, California.

[ X ]     **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Greg Tatum

410417
1/143

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

TOYOTA MOTOR NORTH AMERICA, INC.; DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MICHAEL HOULF

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*
CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

APR 05 2012

John A. Clarke, Executive Officer/Clerk
By: J. Colligan, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: Superior Court of Los Angeles County
*(El nombre y dirección de la corte es):*

600 South Commonwealth Avenue
Los Angeles, California 90005

**CASE NUMBER:**
*(Número del Caso):*
JCCP 4621

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Brian R. Strange, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025; (310) 207-5055

DATE: APR 05 2012      JOHN A. CLARKE,      Clerk, by  J. COLLIGAN    , Deputy
*(Fecha)*                                    *(Secretario)*                      *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
   Toyota Motor North America, Inc.
3. ☒ on behalf of (specify):

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

STRANGE & CARPENTER
BRIAN R. STRANGE (103252)
GRETCHEN CARPENTER (180525)
JOHN P. KRISTENSEN (224132)
12100 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025
Tele: (310) 207-5055; Fax: (310) 826-3210
lacounsel@earthlink.net
gcarpenter@strangeandcarpenter.com
jkristensen@strangeandcarpenter.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA M. ROACH (254142)
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

Attorneys for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES – CENTRAL CIVIL WEST

| | |
|---|---|
| **Coordination Proceeding,**<br>**Special Title (Rule 3.550)**<br><br>**TOYOTA MOTOR CASES**<br><br>MICHAEL HOULF,<br><br>              Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR NORTH AMERICA,<br>INC.; TOYOTA MOTOR SALES, U.S.A.,<br>INC.; and DOES 1 through 10, inclusive,<br><br><br>              Defendants. | Case No. : JCCP 4621<br><br>*Houlf v. Toyota Motor Sales, U.S.A., Inc.,*<br>Placer County Superior Court<br>Case No. S CV 27280<br><br>**FIRST AMENDED COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL;**<br>**DECLARATION OF HOULF**<br><br>**(1) Breach of the Song-Beverly Express**<br>    **Warranty Act, Cal. Civ. Code § 1793.2**<br>**(2) Violation of California Bus. & Prof.**<br>    **Code §§ 17200,** *et seq.*<br>**(3) Breach of Consumers Legal Remedies**<br>    **Act, Cal. Civ. Code §§ 1750,** *et seq.*<br>**(4) Breach of Express Warranty**<br>**(5) Breach of Implied Warranty of**<br>    **Merchantability**<br>**(6) Breach of Implied Warranty of Fitness** |

00038168

1

Case No. : JCCP 4621

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL; DECLARATION OF HOULF

1  Plaintiff Michael Houlf, an individual (hereinafter "Plaintiff" or "Mr. Houlf"),

2  complains of defendants Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc.,

3  and DOES 1 through 100 and each of them, and alleges as follows:

4  **I.    NATURE OF THE ACTION**

5     1.     Since the release of certain of its 1998 model year vehicles, Toyota has

6  marketed and sold vehicles equipped with an electronic throttle control system ("ETCS").

7  Unlike other vehicle manufacturers with generally similar ETCS-equipped vehicles, Toyota

8  did not install appropriate safety features such as a brake override system to mitigate the risk

9  of sudden unintended engine acceleration ("SUA").  SUA is safety-related, placing people and

10  property at risk.   It also constitutes a nonconformity under California's Song-Beverly

11  Consumer Warranty Act, Civil Code §1793.2, *et seq.* (the "Warranty Act").   Toyota has

12  known since at least 2002 that its vehicles suffered from SUA.  Nonetheless, Toyota has

13  concealed the existence of SUA from its customers including plaintiff, has not fixed the SUA

14  problem in plaintiff's car or in any other of its vehicles, has not adequately warned purchasers

15  including plaintiff of the SUA problem or adequately instructed drivers about what should be

16  done if they experience a SUA event, and has not told those, like Mr. Houlf, who has

17  experienced SUA of their rights and Toyota's obligations under California law, including the

18  Warranty Act.  Instead, Toyota has affirmatively denied those rights and obligations.  Toyota

19  has focused on covering up and downplaying the problem.  In fact, Toyota, in concert with its

20  agents and co-conspirators, actively misrepresented to the public, including plaintiff, and

21  regulators that any SUA problem is in fact a "floor mat" or "sticking pedal" problem in certain

22  vehicles that can be readily fixed.  Once the existence of the SUA nonconformity publicly

23  surfaced, Toyota continued to engage in a successful and massive public relations campaign

24  designed to prevent its customers including Mr. Houlf from knowing about or appreciating the

25  dangers its vehicles pose or how consumers can protect themselves or others if they experience

26  a SUA event.

27     2.     In December of 2007, Michael Houlf purchased a 2008 Toyota Tundra with

28

1   VIN number 5TFBV541X8X037523 (the "Subject Vehicle").   The Subject Vehicle is

2   equipped with an ETCS but is not equipped with a brake override system.  Before the recalls,

3   Mr. Houlf was driving his Tundra in California, travelling with the flow of traffic.  Through no

4   fault of his own, his vehicle suddenly and unexpectedly accelerated.  Shortly thereafter, in

5   September 2009 and January 2010, Toyota announced two recalls for the 2008 Toyota Tundra.

6   With the first recall, known as the "floor mat recall," Toyota blamed SUA on incompatible or

7   improperly installed floor mats.  With the second recall, known as the "sticky pedal recall,"

8   Toyota blamed SUA on sticking accelerator pedals.  Toyota claimed both were necessary to

9   address mechanical causes of SUA (floor mats and sticky pedals) and continued reiterating

10  that SUA was not related to ETCS.

11       3.      Mr. Houlf received a notice from Toyota in early 2010 concerning the "sticky

12  pedal" recall.  As instructed, in February and March 2010, Mr. Houlf presented his Tundra to a

13  Toyota dealership for repairs to prevent SUA.  Approximately a month later, in April 2010,

14  Plaintiff was in the parking lot of a Post Office in Cool, California when his Tundra

15  experienced another SUA event.  Despite hitting the brakes, the vehicle's engine would not

16  stop accelerating.  The vehicle was jerking and surging while Plaintiff attempted to stop the

17  vehicle.  The Tundra finally stopped when Plaintiff turned off the engine.

18       4.      Toyota did not repair the Tundra and did not install a brake override system

19  on the Tundra at any time, including as a result of the floor mat and sticky pedal recalls.

20  Rather, Toyota actively covered the fact that any SUA problem existed in plaintiff's ETCS

21  equipped vehicle beyond mechanical defects related to the floor mats and sticky pedals.

22  Despite knowing that this vehicle suffered SUA unrelated to the sticky pedal and floor mats,

23  Toyota failed to inform Plaintiff at the time he presented his vehicle for repair or any time

24  before or after of his rights and remedies under the Warranty Act or Mr. Houlf's pre-purchase

25  rights and his post-purchase rights.  Toyota's conduct and business practices also violate

26  California's Unfair Competition Law, Business & Professions Code §17200, *et seq.* (the

27  "UCL").

28

5.     Toyota's conduct and business practices have resulted in a denial of Mr. Houlf's rights under California law.  These rights include his pre-purchase rights to being told of safety-related defects before he purchased the Subject Vehicle and his rights to repair, repurchase, or reimbursement of the Subject Vehicle under the Warranty Act.  Toyota also has failed to tell Mr. Houlf (as well as other purchasers and lessors of the 2008 Toyota Tundra) how to bring his vehicle to a safe stop when it experiences a SUA event.  Instead, Toyota continues to deny the very existence of SUA.   Mr. Houlf now owns a vehicle with a demonstrated and dangerous propensity for SUA.  As a result of Toyota's conduct, Mr. Houlf has lost money or property.

6.     Plaintiff seeks monetary relief including a civil penalty in the amount double his actual damages pursuant to Civil Code §1794(c) because Toyota's conduct was willful. Plaintiff also seeks injunctive and other equitable relief requiring Toyota to: change its unfair and deceptive business practices by, *inter alia*, informing purchasers and lessors of 2008 Toyota Tundras through a corrective advertising campaign about the true nature and dangers posed by SUA in the 2008 Toyota Tundra, educate purchasers and lessors of 2008 Toyota Tundras about what they should do in the event they experience an SUA event in their 2008 Toyota Tundra, and inform purchasers and lessors of 2008 Toyota Tundras about their post-purchase (or lease) legal rights to repair, replacement or reimbursement pursuant to the Warranty Act.

II.     **PARTIES**

7.     Plaintiff Michael Houlf, was and is a resident of Cool, California, an unincorporated part of El Dorado County.   Prior to the subject incident, Plaintiff Michael Houlf purchased the Subject Vehicle.

8.     Defendant Toyota Motor North America, Inc. (hereinafter "Toyota N.A.") is and was a corporation, licensed to do business in the State of California, with its principal place of business located at 19001 South Western Avenue, Torrance, California 90501, in Los Angeles County, and at all relevant times herein sold vehicles to members of the general

1    public as well as designed, tested, manufactured, inspected, distributed, and recalled them, and

2    warned and instructed users on the safe use of the motor vehicles in exchange for valuable

3    consideration in Los Angeles County. Toyota N.A. is a wholly owned subsidiary and an agent

4    of Toyota Motor Corporation ("TMC").

5            9.      Defendant Toyota Motor Sales U.S.A., Inc. (hereinafter "TMS") is and was a

6    corporation, licensed to do business in the State of California, with its principal place of

7    business located at 19001 South Western Avenue, Torrance, California 90501, in Los Angeles

8    County, and at all relevant times herein sold vehicles to members of the general public as well

9    as designed, tested, manufactured, inspected, distributed, and recalled them, and warned and

10    instructed users on the safe use of the motor vehicles in exchange for valuable consideration in

11    Los Angeles County. TMS is a wholly owned subsidiary and an agent of Toyota Motor

12    Corporation.

13            10.      The true names, capacities or involvement, whether individual, corporate,

14    governmental or associate, of the defendants named herein as DOE are unknown to Plaintiff

15    who therefore sues said defendants by such fictitious names. Plaintiff prays for leave to

16    amend this Complaint to show their true names and capacities when the same have been

17    finally determined. Plaintiff is informed and believes, and upon such information and belief

18    alleges, that each of the defendants designated herein as DOE is negligently, intentionally,

19    strictly liable or otherwise legally responsible in some manner for the events and happenings

20    herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and

21    damages proximately thereby to Plaintiff, as is hereinafter alleged.

22            11.      At all times herein mentioned, each and every defendant herein was the

23    owner, agent, servant, joint venturer and employee, each of the other, and each was acting

24    within the course and scope of his ownership, agency, service, joint venture and employment.

25            12.      Unless otherwise indicated, defendants are collectively referred to as

26    "Toyota" or "Defendants."

27    **III.    <u>JURISDICTION AND VENUE</u>**

28

13.     The Court has personal jurisdiction over the Defendants because they are headquartered in the State of California, conduct substantial business in the State of California, and have otherwise established sufficient contacts with the State of California.

14.     This Court has jurisdiction over this matter pursuant to the California Constitution, Article XI, section 10 and California Code of Civil Procedure ("CCP") § 410.10 because Defendants transacted business and committed and continue to commit the acts complained of herein in California.  The violations of law alleged herein were committed in Los Angeles County and elsewhere within the State of California. Plaintiff's damages exceed the jurisdictional "amount in controversy" requirement for an Unlimited Jurisdiction civil case in this Court, as the amount in controversy is well in excess of $25,000.

15.     Venue is proper in Los Angeles County, California pursuant to CCP §§ 404 and 1048 because the Judicial Council has assigned these actions to this Court.

V.     **FACTUAL BACKGROUND**

A.     Toyota Warranted That Plaintiff's 2008 Toyota Tundra Equipped with ETCS Was Safe and Reliable

25.     Unlike traditional throttle control systems where a physical cable connects the accelerator pedal to the engine throttle, with ETCS, the engine throttle is controlled entirely by electronic signals sent from the vehicles' onboard computer system.   A sensor at the accelerator detects how far the gas pedal is depressed and transmits that information to a computer that controls a motorized engine throttle.  The computer module determines how far the accelerator is depressed and, in turn, tells the engine throttle motor how far to open the throttle valve.  Generally, the more the throttle valve is opened, the more the vehicle will accelerate.  Toyota first began installing the ETCS in certain of its 1998 model year Lexus vehicles.  More widespread installation in Toyota vehicles began with the introduction of 2001 model year vehicles.  The Subject Vehicle is equipped with ETCS.

26.     Toyota expressly warranted in the Owner's Warranty Information booklet for the Subject Vehicle that Toyota would conduct all "repairs and adjustments needed to correct defects in materials or workmanship."

27.     Toyota also made express representations in its Warranty Information booklet for the Subject Vehicle:

> At Toyota, our top priority is always our customers. We know your Toyota is an important part of your life and something you depend on every day. That's why we're dedicated to building products of the highest quality and reliability. Our excellent warranty coverage is evidence that we stand behind the quality of our vehicles.... Our goal is for every Toyota customer to enjoy outstanding quality, dependability and peace of mind....

28.     Toyota also represents in the Warranty Information booklet that the Subject Vehicle was "built to the highest standards of quality, durability and performance."

29.     Aware that safety is of primary importance to car purchasers, including Plaintiff, Toyota actively promotes all of its cars as the "safest." In August, 2009, Akio Toyoda, president of Toyota's Japanese parent corporation, issued a public apology related to fatal Toyota SUA incidents, admitting: *"Customers bought our cars because they thought they were the safest* but now we have given them cause for grave concern. I can't begin to express my remorse."

30.     In 2010, Toyota reaffirmed its "pledge to you" when TMS President and Chief Operating Officer James Lentz issued an open letter to the public in which he stated: "More than 70 years ago, Toyota was founded with one mission in mind – to provide our customers with the safest, most reliable vehicles in the world." TMS further promised in Mr. Lentz' letter that "When we learn about a problem our customers are experiencing, we'll investigate without delay, and we'll quickly address any safety issues we find." Mr. Lentz is the second highest Toyota executive in North America.

B.     Toyota Has Known That Plaintiff's ETCS-Equipped Vehicle Is Prone to SUA

31.     By at least 2002, Toyota was well aware that the ETCS system installed in its vehicles resulted in a propensity for SUA. Toyota learned this through a series of complaints from consumers and internal investigations beginning with one of the earliest ETCS-equipped vehicle models, the Camry. For example, on February 2, 2002, Toyota received a complaint

---

7

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL; DECLARATION OF HOULF

Case No. : JCCP 4621

from a customer of a ETCS-equipped 2002 Camry surging even though the brakes were depressed. Toyota received at least ten other similar complaints concerning ETCS-equipped vehicles before August 2002. Toyota did not disclose any of these complaints to the public.

32.     As early as March 2002, TMS asked Toyota Motor Corporation to investigate the root cause of the surging. Resulting reports indicate that Toyota was unable to diagnose the root cause of surging or determine a fix for the problem which it was willing to pay.

33.     In response to an investigation into similar incidents conducted by the National Highway Traffic Safety administration ("NHTSA"), Toyota issued at least three "Technical Service Bulletins" to its dealers related to SUA. On August 30, 2002, Toyota released a bulletin alerting that some 2002 Camry ETCS-equipped vehicles "may exhibit a surging during light throttle input at speeds between 38-42 MPH with lockup (L/U) 'ON.'" TOY-MDLID00195703. The document provided instructions for repairing this problem by reprogramming the Electronic Control Module but did not provide for the installation of any override system or other fail-safe mechanism to mitigate or prevent SUA. *Id.*

34.     On December 23, 2002, Toyota issued another Technical Service Bulletin to its dealers noting that 2002 and 2003 ETCS-equipped Camrys "may exhibit a triple shock (shudder) during the shift under 'light throttle' acceleration." TOY-MDLID0027333. The bulletin advised dealers to follow the repair procedure in the bulletin to rectify the situation but did not provide for the installation of any brake override system or other fail-safe mechanism to mitigate or prevent SUA. *Id.*

35.     Less than nine months later, on May 16, 2003, Toyota released a nearly identical Technical Service Bulletin to its dealers which stated that some 2003 ETCS-equipped Camrys "may exhibit a surging during light throttle input at speeds between 38-42 mph with lock-up (L/U) 'ON.'" TOY-MDLID00277674. Again, Toyota claimed the Electronic Control Module calibration had been revised to correct this condition but did not provide for the installation of any override system or other fail-safe mechanism to mitigate or prevent SUA. *Id.*

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL; DECLARATION OF HOULF

Case No. : JCCP 4621

1      36.     Toyota did not disclose the existence of these Technical Service Bulletins to

2   consumers or explain that Toyota could not solve the SUA problem.  Instead, Toyota implied

3   that the problem would be eliminated after recalibration of the Electronic Control Module.

4      37.     Toyota documented a number of SUA events on its own, beginning as early as

5   2002.  Toyota technicians investigating this problem were unable to diagnose the problem or

6   determine a remedy.

7      38.     Toyota's customers have experienced SUA events for years, and have brought

8   their ETCS-equipped vehicles, including 2008 Toyota Tundras, to Toyota's dealerships

9   reporting these events.  Dealerships throughout California have documented these reports and

10   conveyed them to Toyota.  Toyota has not reported many of these complaints and instead has

11   actively covered them up, in violation of various laws.

          C.     Toyota Knew That Its ETCS-Equipped Vehicles Were Prone to SUA But
12                Chose to Cover Up This Fact from Mr. Houlf

13            1.     Toyota Represented That SUA Is Caused Solely by "Faulty
14                  Floor Mats"

15      39.     Toyota was aware that its ETCS-equipped vehicles were prone to SUA but

16   chose to cover up this fact and instead blamed mechanical sources in the vehicles, such as

17   floor mats and "sticky pedals".  Despite its knowledge that other non-mechanical causes in the

18   ETCS-equipped vehicles caused SUA events, Toyota continued and continues to lie to owners

19   of ETCS-equipped vehicles, including plaintiff.

20      40.     Over the course of six years, NHTSA opened at least eight defect petitions

21   regarding complaints of their vehicles experiencing SUA.  *See* TOY-MDLID00122427; TOY-

22   MDLID00062287-62289;    TOY-MDLID00042172;    TOY-MDLID00044140;    TOY-

23   MDLID90043097-90043099; TOY-MDLID00211685-211694; TOY-MDLID00027008.

24      41.     NHTSA requested information of SUA incidents from Toyota as part of the

25   investigations.  In response, Toyota denied that any SUA defect existed, stated that there was

26   no defect trend and that its Electronic Control Module could not fail in ways its engineers had

27   not already perceived.  Toyota reported 123 complaints that it said "may relate to the alleged

28

1    defect." TOY-MDLID00003705.  But Toyota excluded from its response the following

2    relevant categories of complaints, among others:

       (a)     Incidents alleging uncontrollable acceleration that occurred for a long

4    duration;

       (b)     Incidents in which the customers alleged that they could not control a

6    vehicle by applying the brake; and

       (c)     Incidents alleging SUA that occurred when moving the shift lever to the

8    reverse or the drive position.

9        42.    In addition to withholding a number of relevant SUA complaints, Toyota

10   concealed a number of other relevant documents from NHTSA, including videos recording

11   incidents of SUA and an independent report prepared by a Forensic Technologist and

12   mechanical engineer who examined a vehicle that had experienced an SUA event and

13   determined that the event was due to an impaired ETCS.  *See* TOY-MDLID00206917; TOY-

14   MDLID90064979.

15       43.    In 2007, Toyota stated to NHTSA that it had received only 1,008 complaints of

16   SUA in the various Toyota models under investigation.  Three years later, however, Toyota

17   would disclose to Congressional investigators that it had received *37,900* complaints relating

18   to SUA in Toyota's vehicles from January 1, 2000, through January 27, 2010.

19       44.    Over several years, Toyota has actively sought to cover up any electronic

20   problem in all of its ETCS-vehicles and instead has blamed floor mats.  For example, in 2005

21   while NHTSA was investigating Toyota vehicles for SUA, Toyota sought to cover up any hint

22   that the problem was ETCS-related and instead stated that the issue was entirely "floor mat

23   related."  TMC removed any reference to acceleration issues in letters sent to owners in

24   connection with NHTSA's IS 250 All Weather Drive investigation.  A Toyota Quality

25   Compliance Manager stated, "[We] pulled out the 'vehicle speed control' part.  NHTSA may

26   come back [and add it in], but TMC wanted to try."  TOY-MDLID00002896.

27

28

45.     Similarly, when NHTSA opened its March 28, 2007, investigation of SUA in ETCS-equipped vehicles, Toyota insisted that NHTSA's public website change its statement that "NHTSA has received five consumer complaints regarding *unintended throttle control* in the subject vehicles" to "NHTSA received five consumer complaints where the *All Weather Floor Mat* may have interfered with the accelerator pedal operation." TOY-MDLID00000566 (emphasis added).   On September 26, 2007, as a result of NHTSA's investigation, Toyota issued a recall of 55,000 ETCS-equipped Lexus/Toyota optional All-Weather Floor Mats.

46.     On January 26, 2009, NHTSA's Office of Defects Investigation closed its investigation regarding SUA involving 2004 early-production ETCS-equipped Siennas, after Toyota agreed to recall the Toyota vehicles built between January 10, 2003, and June 11, 2003. Toyota then issued Recall 09V023 for 26,501 and called the action a "safety improvement campaign".   Like the 2009 floor mat recall involving the Subject Vehicle, Toyota's recall instructed dealers to replace the original floor carpet cover with the newer-design floor carpet (and retention clip) at no charge to the owner.   The repair was expected to reduce the potential for trim panel interference with the accelerator pedal should the retention clips become dislodged because of improper service or other reasons.   Dealers were to replace the retention clip and floor carpet cover at no charge.

47.     Toyota continued this same cover up with respect to the Subject Vehicle during its 2009 floor mat recall.   Continuing with its campaign of blaming SUA events on floor mats, on September 29, 2009, Toyota issued a Consumer Safety Advisory claiming that any SUA problem in its ETCS-vehicles was caused entirely by incompatible or unsecured floor mats in certain Toyota vehicles, including the Subject Vehicle.   A November 2, 2009 press release unequivocally stated that "[Toyota] confirms that *no defect exists in vehicles in which the driver's floor mat is compatible with the vehicle and [is] properly secured.*"   TOY-MDLID00008630 (emphasis added).   Toyota further falsely represented that "[t]he question of unintended acceleration involving Toyota and Lexus vehicles has been repeatedly and thoroughly investigated by NHTSA, without any finding of defect other than the risk from an

1    unsecured or incompatible driver's floor mat ...." *Id.*

2        48.   In a November 25, 2009, statement concerning the floor mat recalls, Toyota

3    again falsely represented and warranted that floor mats were the sole cause of SUA in its

4    vehicles, including in the Subject Vehicle. In print media and in statements made to Toyota

5    dealers for dissemination to new vehicle buyers, Toyota falsely represented that "Toyota

6    vehicles are among the safest on the road today," that there was no problem with ETCS and

7    that ETCS has been "evaluated numerous times."

8        49.   TMS sought to ensure that any SUA incidents in ETCS-equipped vehicles were

9    attributed solely to floor mat causes and to avoid mention of ETCS at all costs.  Toyota

10   executives were extremely pleased that NHTSA limited its investigation and results to a "floor

11   mat issue" instead of investigating the ETCS.  *See* TOY-MDLID00004973; TOY-

12   MDLID00000601. In an internal email by Christopher Tinto, a former NHTSA official and

13   Toyota's current Vice President for regulatory affairs, Tinto stated: "SIR – THAT WAS A

14   SUCCESS! NHTSA wanted us to call the cars defective – we got them to agree it was the

15   MATS that were defective." TOY-MDLID000006015.

16       2.   Toyota Next Represented That SUA In ETCS-Equipped
              Vehicles Is Caused Solely By "Sticky Accelerator Pedals"

17

18       50.   Despite Toyota's repeated assurances that SUA in ETCS-equipped vehicles

19   including the Subject Vehicle was caused entirely by unsecured or incompatible floor mats,

20   Toyota was in fact aware of other catalysts for SUA, including mechanical defects in the

21   accelerator pedal that caused it to stick in the "open" position.

22       51.   On September 29, 2009 – the very same day that Toyota recalled the Subject

23   Vehicle along with 3.4 million other vehicles in the United States because of possible floor

24   mat entrapment – Toyota Motor Europe issued a Technical Information ("TI") to Toyota

25   distributors in Austria, Belgium, Cyprus, the Czech Republic, Denmark, Estonia, Finland,

26   France, Germany, Greece, Holland, Hungary, Iceland, Ireland, Israel, Italy, Malta, Norway,

27   Poland, Turkey, Portugal, Russia, Slovenia, Spain, Sweden, Switzerland, Ukraine, the United

28   Kingdom, Georgia, Kazakhstan, and Romania identifying a production improvement and

---

                                              12                        Case No. : JCCP 4621

1   repair procedure to address complaints by customers in those countries of sticky accelerator

2   pedals, sudden RPM increase and/or SUA.  Nothing similar was issued to warn customers in

3   the United States, including plaintiff.  Mr. Houlf had a right to learn why Toyota was recalling

4   outside the United States similar vehicles to his 2008 Toyota Tundra under 49 CFR §§ 579.11-

5   12.

6          52.    From about October 22, 2009, through October 28, 2009, Toyota issued three

7   internal Field Technical Reports concerning sticky accelerator pedals in ETCS-equipped

8   Corollas sold in the United States and started to collect these parts.  However, Toyota still kept

9   this issue away from the public eye and did not inform its customers of the problem or that it

10  involved many other ETCS-equipped vehicles beyond just Corollas, including the 2008

11  Toyota Tundra.  On January 16, 2010, Katsuhiko Koganei (a.k.a. "Kogi"), TMS Executive

12  Coordinator – Corporate Communications, sent an e-mail to Mike Michaels and other

13  executives at Toyota, stating "we should not mention about the mechanical failures of

14  [accelerator] pedal, because we have not clarified the real cause of the sticking accelerator

15  pedal formally, and the remedy for the matter has not been confirmed."   TOY-

16  MDLID00027481.   Irv Miller, TMS Group Vice President of Environmental and Public

17  Affairs, responded to Koganei stating,

18          I hate to break this to you but WE HAVE a tendency for MECHANICAL
            failure in accelerator pedals of a certain manufacturer on certain models.  We
            are not protecting our customers by keeping this quiet.  The time to hide on this
19          one is over.  We need to come clean and I believe that Jim Lentz and Yoshi are
            on the way to DC for meetings with NHTSA to discuss options.  We better just
20          hope that they can get NHTSA to work with us in coming with a workable
            solution that does not put us out of business.

21

22  TOY-MDLID00027481.

23          53.    Still, Toyota did not issue any safety advisories to plaintiff or any other United

24  States consumers regarding the sticking pedal issue until January 21, 2010, when Toyota

25  issued a "Defect Information Report" concerning a recall of eight models, including the

26  Subject Vehicle, due to a "defect [that] exists in the accelerator pedal assembly which may

27

28

1   result in the accelerator pedal becoming harder to depress, slower to return, or, in the worst

2   case, mechanically stuck ....." TOY-MDLID00015890.

3        54.    With the "sticky pedal" recall, Toyota falsely represented to Mr. Houlf and

4   other ETCS-equipped vehicle owners that the SUA nonconformity was finally cured.   On

5   February 2, 2010, TMS' President Lentz published "An Open Letter to Toyota Customers" in

6   which he announced a "comprehensive plan to permanently fix" SUA events which he claimed

7   were caused by "sticking" accelerator pedals.   He assured the Toyota customers that:   "We

8   know what's causing this and what we have to do to fix it.   We've tested our solution

9   rigorously, and we are confident that it works."   Mr. Lentz closed the open letter with the

10  promise that "[e]nsuring your safety is our highest priority.   We'll continue to do everything

11  we can to meet – and exceed – your expectations, and justify your continued trust in Toyota."

12       55.    Mr. Lentz also assured consumers that SUA events are wholly controllable.   He

13  wrote in an open letter entitled "Here are the facts for our customers."   "At Toyota, we take

14  this issue [of SUA] very seriously, but I want to make sure our customers understand that this

15  situation is rare and generally doesn't occur suddenly.   In the instances where it does occur, the

16  vehicle can be controlled with firm and steady application of the brakes."

17       56.    Toyota, however, new that the "sticky pedal" recall did not fix the SUA

18  problem.   In fact plaintiff's Tundra was subject to and repaired pursuant to the "sticky pedal"

19  recall.   On February 11, 2010, after experiencing several instances of SUA, which he informed

20  Toyota of in the 2008 Tundra, Mr. Houlf brought the Subject Vehicle into a Toyota service

21  provider where a reinforcement bar was installed on his Tundra's gas pedal pursuant to the

22  sticky pedal recall.   After experiencing several more instances of SUA, plaintiff informed the

23  Toyota repair facility.   On March 31, 2010, the Subject Vehicle underwent yet another repair

24  and  a completely new gas pedal was installed on the 2008 Tundra.   The Subject Vehicle had

25  just over 20,000 miles at the time of this repair.   However, approximately a month later,

26  plaintiff experienced another SUA event in the 2008 Tundra.   Mr. Houlf was unable to stop his

27  vehicle despite stepping on the brake.   Although Toyota knew that plaintiff's Subject Vehicle

28

1  was prone to SUA unrelated to floor mats and sticky pedals, Toyota denied plaintiff's claim

2  under the Warranty Act and failed to inform plaintiff that the vehicle was in fact

3  nonconforming. Instead, Toyota actively covered up the SUA problem and stated that the

4  vehicle was repaired pursuant to the recalls.

5       57.   Shortly thereafter, on or about April 5, 2010, NHTSA announced that it was

6  seeking a $16.375 million civil penalty from Toyota because of Toyota's failure to inform

7  NHTSA about the SUA nonconformity purportedly related to the sticking pedal. This sanction

8  constituted the largest financial penalty ever imposed on an automaker by the United States

9  government and was the largest penalty permitted by law. Transportation Secretary Ray

10 LaHood stated, "[b]y failing to report known safety problems as it is required to do under the

11 law, Toyota put consumers at risk."

12      58.   On April 19, 2010, Toyota Motor Corporation agreed to pay NHTSA's record

13 $16.375 million penalty to avoid any official findings of fact by NHTSA. Toyota admitted that

14 it "could have done a better job of sharing relevant information within our [Toyota's] global

15 operations and outside the company ...."

16      59.   While floor mats and sticking accelerator pedals appear to be among the

17 catalysts causing the ETCS to malfunction and resulting in SUA, other causes also exist.

18      60.   On December 20, 2010, NHTSA announced that Toyota agreed to pay an

19 additional $16.375 million -- again the largest civil penalty allowed by law - as a result of

20 Toyota's handling of the recalls involving the SUA problems with floor mats and sticking

21 pedals. NHTSA found that Toyota failed to notify NHTSA in a timely manner and failed to

22 adequately report SUA incidences. NHTSA acknowledged the continuing problem of SUA in

23 Toyota vehicles and the need to continue to explore causes of SUA beyond pedal entrapment

24 by floor mats and sticking accelerator pedals.

25 ///

26 ///

27 ///

28

D.   Despite Toyota's Public Statements to the Contrary, Toyota Knew That SUA In ETCS Vehicles Was Not Fixed With the Floor Mat and Sticky Pedal Recalls

61.   While Toyota was publicly claiming, as it did directly to plaintiff, that all SUA incidents were either due to floor mat issues or sticky pedals, Toyota executives acknowledged internally that they could not always trace the "root cause" of SUA in ETCS vehicles: "[O]ne big problem is that no codes are thrown in the ECU, so the allege [sic] failure (as far as we know) cannot be documented or replicated." TOY-MDLID00050747.  The implications were "[t]he service tech therefore can't fix anything, and has no evidence that any problem exists." *Id.*  That is, any number of catalysts can trigger the vehicle's onboard computer to incorrectly instruct the ETCS to open, but engineers cannot always re-create the catalyst.

62.   Internal Toyota emails indicate that Toyota knew that customer reports of SUA to the NHTSA did not mention interference between the panel and pedal, and were likely not attributable to any pedal problem.  A September 2009, email discussing NHTSA's concerns stated:

> In my discussions today, NHTSA informed me that they do not believe that the action to recall [all weather floor mats] by Toyota has been effective in reducing the occurrence of long-duration, high speed events related to accelerator pedal entrapment....  They believe that these events will continue to occur and that the most effective way to address them is by addressing the vehicle itself.  NHTSA was very clear in our discussion today that they believe the vehicle must be countermeasured.

TOY-MDLID00025422.

63.   In February 2010, TMS' Lentz was questioned before a Congressional panel: "Do you [] believe that the recall on the carpet changes and the recall on the sticky pedal will solve the problem of sudden unintended acceleration?"  His reply: "Not totally."  Among other potential causes, Mr. Lentz identified software problems, faulty cruise control, and engine revs caused by engaging the air conditioner.

64.   Toyota executives further conceded in connection with Congressional hearings that they do not, in fact, know the cause of the SUA problem in the majority of cases in ETCS-equipped vehicles (contrary to repeated past claims about floor mats and sticking pedals).

65.     Toyota dealers also recognized that the floor mat and pedal recalls did not solve the problem:

> I'm afraid that many of us in the dealer body feel embarrassed and not a little ashamed regarding a perception that we may have been used to faithfully endorse the (apparently inaccurate) party line that the only customer concerns have been as a result of pedal entrapment. While I'm sure that this was never Toyota's intent, there is a palpable feeling somewhere between disappointment and betrayal at the retail level. As you know, this would be best addressed by a prompt, effective cure for customer concerns.

TOY-MDLID00015943.

66.     The House Committee on Energy and Commerce also noted the electronic failures at the heart of SUA:

> [T]he documents [produced by Toyota] appear to show that Toyota consistently dismissed the possibility that electronic failures could be responsible for incidents of sudden unintended acceleration. Since 2001, when Toyota first began installing electronic throttle controls on vehicles, Toyota has received thousands of consumer complaints of sudden unintended acceleration. In June 2004, the National Highway Traffic Safety Administration (NHTSA) sent Toyota a chart showing that Toyota Camrys with electronic throttle controls had over 400% more 'vehicle speed' complaints than Camrys with manual controls. Yet, despite these warnings, Toyota appears to have conducted no systematic investigation into whether electronic defects could lead to sudden unintended acceleration.
>
>                                         ***
>
> We wrote to you on February 2, 2010, to request any analyses by Toyota that show sticky pedals can cause sudden unintended acceleration. Toyota did not produce any such analyses. To the contrary, Toyota's counsel informed the Committee on February 5 that a sticky pedal "typically ... does not translate into a sudden, high-speed acceleration event." Moreover, our review of the consumer complaints produced by Toyota shows that in cases reported to the company's telephone complaint lines, *Toyota personnel identified pedals or floor mats as the cause of only 16% of the sudden unintended acceleration incident reports. Approximately 70% of the sudden unintended acceleration events in Toyota's own customer call database involved vehicles that are not subject to the 2009 and 2010 floor mat and "sticky pedal" recalls.*

(Emphasis added.)

67.     Toyota was well aware that there were electronic causes to SUA events in ETCS-equipped vehicles. On March 5, 2010, Congressmen Henry A. Waxman and Bart T. Stupak, Chairmen of the House Subcommittee on Oversight and Investigation, wrote a letter to the President of TMS, questioning Toyota's failure to acknowledge these other causes:

We do not understand the basis for Toyota's repeated assertions that it is "confident" there are no electronic defects contributing to incidents of sudden acceleration. We wrote you on February 2, 1010, to request "all analyses or documents that substantiate" Toyota's claim that electronic malfunctions are not causing sudden unintended acceleration. The documents that Toyota provided in response to this request did not provide convincing substantiation. We explained our concerns about the failure of Toyota to substantiate its assertions in our letter to you in February 22, 2010.

After we sent our letter on February 22, Toyota provided a few additional documents to the Committee early in the morning on the day of the hearing. Several of these documents were written in Japanese. While some of these documents appear to contain preliminary fault analyses that could be used in planning a rigorous study of potential cause of sudden unintended acceleration, not one of them suggested that such a rigorous study had taken place. As we explained in our February 22 letter, the only document Toyota has provided to the Committee that claims to study the phenomenon of sudden unintended acceleration in a comprehensive way, is an interim report from the consulting firm Exponent, Inc. This report has serious deficiencies, as we explained in our February 22 letter.

68.     Toyota's repeated representations to the public, including plaintiff, that SUA is entirely attributable to floor mats and sticking pedals and misled plaintiff and prevented and/or dissuaded him from presenting his vehicle to Toyota for appropriate and effective repair. Toyota's public representations also omit critical information about previous instances of SUA unrelated to floor mats and pedals in ETCS-equipped vehicles including the 2008 Toyota Tundra.

69.     Speaking to these misrepresentations and omissions during the Toyota Congressional hearings, Senator Waxman stated,

By suggesting that only a trapped floor mat can cause a loss of throttle and braking control, it lulls owners of models with no driver's side floor mat into believing there is no possibility of a potentially catastrophic loss of throttle and braking control. According to documents supplied by Toyota to the Committee on Energy and Commerce of the U.S. House of Representatives, fewer than 16% of sudden, unintended acceleration events reported by customers involved floor mats and/or "sticky pedals." [Toyota's representations] also misleads owners with a driver's-side floor mat into believing that, in the event of a sustained near-wide-open throttle malfunction, the first response should be to visually determine if the floor mat is interfering with the accelerator pedal.

70.     Instead of acknowledging that SUA in Toyota vehicles is caused by more than just floor mats and accelerator pedals and properly informing consumers such as plaintiff of this fact, Toyota focused on how to properly convey its cover-up to the public. Despite

representing that it was continuing to look into the SUA problem to reassure customers, Toyota instead focused its efforts on discrediting independent researchers who had demonstrated a problem with the ETCS connected to SUA.  As Representative Stupak stated in his opening statement during the May 20, 2010 Congressional hearing on SUA: "What's disappointing to me is learning that Toyota seems to have focused more on discrediting its critics than on solving the problem."

71.    In fact, after the February 24, 2010 congressional hearing in which TMS's President Lentz stated that Toyota was "not totally" certain that floor mat and sticky pedal recalls fixed the SUA problems, Toyota hired a public relations firm, Benenson Strategy Group ("BSG"), to advise Toyota on how to repair its image in light of Lentz' testimony and independent research that demonstrated ETCS was connected to SUA.  BSG conducted a poll to learn more about Toyota's educated consumers, referred to as "elites."  In its "Key Findings" presentation to Toyota, BSG found that "[d]ebunking Kane/Gilbert's testing will be critical for restoring confidence among Elites and reassuring audiences that ETC is in fact NOT an issue." TOYEC_00203173.  Dr. Gilbert had conducted independent testing that was presented to Congress to demonstrate that ETCS in Toyota's vehicles can cause SUA.

72.    Instead of conducting its own studies, Toyota engaged in aggressive messaging campaigns designed at communicating to the public that the independent studies were "phony", "shoddy science", "a hoax" and "would never . happen in real life." TOYEC_00203639-42.

73.    To accomplish this messaging goal, Toyota employed Exponent, Inc., a firm that's primary service is providing expert witnesses for manufacturers involved in tort lawsuits, like the Tobacco industry and the automotive industry.   Toyota promptly paid Exponent, to the tune of over $3 million to draft a report discrediting the independent study of Dr. Gilbert.  Despite the fact that Exponent did no independent investigation of the ETCS on Toyota's vehicles, Toyota aggressively promoted Exponent's report as being proof that SUA is not caused by ETCS.  However, as Representative Stupak stated: "Exponent added new steps

1  to Dr. Gilbert's experiment and mischaracterized others, all in an attempt to make his outcome

2  seem unlikely and to invent flaws in his analysis." Independent experts, however, defended

3  Dr. Gilbert's approach.

4          74.    Despite Toyota and Exponent's representations that Exponent was hired to look

5  into the causes of SUA in Toyota vehicles, as of the May 20, 2010 Congressional hearing and

6  after over $3 million paid by Toyota, the only report Exponent had published was to discredit

7  Dr. Gilbert. Exponent had not conducted any independent testing of its own.

8          75.    Consistent with its long pattern of deceptive conduct, Toyota has recently

9  attempted, as a litigation and public relations tactic, to seize advantage of its inability and the

10 inability of others to replicate the SUA problem in ETCS vehicles and to identity its root

11 cause. In recent public statements, Toyota and its lawyers touted that the inability, thus far, to

12 replicate the SUA problem means that no ETCS issue exists, a deceptive and illogical

13 statement they know to be false and misleading.

14          E.     Toyota's Failure to Install a Brake Override System Substantially Impairs
               the Use, Value and Safety of Plaintiff's Vehicle

15

16          76.    Toyota has in part covered up ETCS as the cause of SUA because Toyota did

17 not equip its ETCS vehicles, including the Subject Vehicle, with a BOS, a system that

18 mechanically forces or electronically instructs the ETCS to reduce the engine to idle whenever

19 the brakes are applied or otherwise allows the brakes to stop the vehicle despite a throttle

20 increase. When Toyota first used a ETCS, it included an override system to prevent SUA

21 when the ETCS incorrectly received signals to accelerate. It equipped these early ETCS

22 vehicles with a mechanical system that would close the throttle if the electronic system failed.

23 However, Toyota stopped using the mechanical system with the 2002 model year. In contrast,

24 other manufacturers who use ETCS have regularly employed manual fail-safe mechanisms to

25 prevent SUA events. Throughout the relevant time, Toyota has known this. *See* TOY-

26 MDLID00041130T-0001. Plaintiff's Subject Vehicle was not equipped with a BOS.

27

28

1      77.    Toyota has admitted internally that "there should be 'a fail safe option [installed

2 in ETCS vehicles] similar to that used by other companies to prevent unintended

3 acceleration.'" TOY-MDLID00041130T-0001.

4      78.    In August 2007, NHTSA recommended potential fail-safe mechanisms to

5 Toyota as part of its SUA investigations of Toyota's ETCS-equipped vehicles, including

6 "[u]sing ETC to shut down throttle control" and "cutting off the throttle when the brakes are

7 applied." TOYEC_00062785.

8      79.    In February 2010, Toyota began discreetly reprogramming the Electronic

9 Control Modules in some of the ETCS vehicles. This reprogramming, known as "re-flashing,"

10 created a form of electronic BOS when the ETCS received incorrect instructions to accelerate

11 under certain circumstances. The re-flashing was performed on some vehicles brought into the

12 dealership as a result of Toyota's floor mat and sticking pedal recalls. Toyota worked

13 diligently to downplay the significance of the re-flash, claiming that it was merely done to

14 provide customers "an extra measure of confidence" and to boost "consumer confidence."

15      80.    Toyota has yet to provide this reprogrammed computer module in all of the

16 ETCS vehicles including 2008 Toyota Tundras. In fact, re-flashing was performed in only

17 some of the following vehicles: the 2005-2010 Tacoma, 2009-2010 Venza, 2008-2010

18 Sequoia, 2007-2010 Camry, 2005-2010 Avalon, 2007-2010 Lexus ES350, 2006-2010 Lexus

19 IS 350 and 2006-2010 Lexus IS 250. Mr. Houlf's 2008 Tundra was not "re-flashed" and never

20 received a BOS during the multiple repair attempts.

21      81.    In an internal email, Christopher Santucci explained, "In the past, TMC

22 informed TMA that due to memory limitations of the subject ES350, there is not enough space

23 to adopt a throttle control strategy for field vehicles. We are asking that you revisit this

24 activity to confirm, or seek an alternative solution that would address NHTSA's concerns."

25 TOY-MDLID00025422-25423.

26      82.    For these vehicles, including the Subject Vehicle, the Electronic Control

27 Modules have to be replaced with properly programmed modules, at a higher cost to Toyota.

28

1    Toyota does not want to pay the added costs of increasing the memory so it has not installed a

2    BOS in these vehicles. *See* TOY-MDLID00025423.

3         83.    Brake-override systems are not a new concept – Volkswagen, Nissan, Infiniti,

4    General Motors, Audi, BMW and Mercedes-Benz use such systems in their vehicles that have

5    versions of ETCS, some as far back as 10 years ago.

6         84.    Internal emails between Toyota executives reveal that Toyota previously

7    contemplated installing a brake override system:

> During the floor mat sticking issue of 2007, TMS suggested that there should
> be "a fail safe option similar to that used by other companies to prevent
> unintended acceleration." I remember being told by the accelerator pedal
> section Project General Manager at the time (Mr. M) that "This kind of system
> will be investigated by Toyota, not by Body Engineering Div." Also, that
> information concerning the sequential inclusion of a fail safe system would be
> given by Toyota to NHTSA when Toyota was invited in 2008. (The NHTSA
> knows that Audi has adopted a system that closes the throttle when the brakes
> are applied and that GM will also introduce such a system.)

13   TOY-MDLID00041130T-0001.

14        85.    In addition, a confidential company memo shows that Toyota conducted an

15   internal feasibility study of brake override technology in 2008. The study was prompted by an

16   internal memo from a Toyota employee entitled "Unwanted Acceleration Investigations on

17   Toyota Vehicles." TOY-MDLID00231583. In light of "increasing scrutiny," the memo

18   requested that TMC conduct a feasibility study evaluating the use of the electronic throttle

19   control system "to reduce throttle opening/engine power" as a way to eliminate SUA. *Id.*

20   Toyota ultimately declined to install this important safety feature in any of its vehicles at that

21   time.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

86.   Toyota has since publicly acknowledged the important of BOS and has sought to market itself as a leader in brake override technology:

## Smart Stop Technology (SST)[1]



As an added measure of safety, Toyota created the braking system enhancement known as Smart Stop Technology, This advanced technology automatically reduces engine power when both pedals are pressed at the same time under certain conditions.

Smart Stop Technology intervenes when the accelerator is depressed first (Figure 1) and the brakes are applied firmly for longer than one-half second at speeds greater than five miles per hour. (Figure 2)

Figure 1



In normal driving conditions, you won't notice Smart Stop Technology as it is imperceptible. The feature doesn't engage if the brake pedal is depressed before the accelerator pedal. This allows for vehicles starting on a steep hill to safely accelerate without rolling backward (known as hill start).

Toyota will install Smart Stop Technology in all new models by the end of 2010, making it one of the first full-line manufacturers to offer this braking technology as standard equipment.

Figure 2

87.   Mr. Houlf's 2008 Tundra does not conform to Toyota's warranties, in part, because it is not equipped with a BOS or other fail-safe system.

F.    Toyota Continues to Deny The Existence of a Nonconformity in ETCS Vehicles Including 2008 Toyota Tundras, Rejects Claims and Makes No Disclosures

88.   When Mr. Houlf brought his 2008 Tundra into the local Toyota dealership and complained on multiple trips to the dealership of SUA events, Toyota steadfastly denied there was any SUA problem and rejected any claim of a nonconformity.  Toyota has instead consistently and deceptively maintained to all consumers including Mr. Houlf that there have been no confirmed or documented reports or findings of any type of computer malfunctions related to the Electronic Control Module.

89.   If a customer notifies Toyota of a SUA event and seeks repair or replacement, or attempts to exercise his or her post-sale or lease rights, like plaintiff did, Toyota refuses to address the concern or honor the rights.  Accordingly, such a presentment is futile.  Further,

Case No. : JCCP 4621
FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL; DECLARATION OF HOULF

1   Toyota rejected and continues to reject any claims for relief, other than the limited floor mat

2   and sticking pedal recall.  When Mr. Houlf presented the 2008 Tundra for repair after the last

3   SUA event, Toyota refused to fix his vehicle, failed to acknowledge the existence of any SUA

4   problem and denied that any further repairs were necessary.

5        90.   Toyota actively discourages consumers including plaintiff from presenting their

6   vehicles for repair by continuing to deny that its ETCS vehicles are prone to SUA.  Instead,

7   Toyota represented to Mr. Houlf, that electronic SUA events cannot happen and that any SUA

8   event is rare and is fully attributable to floor mats and/or sticky pedals.  Its official position is

9   that an electronic SUA event is not possible because vehicles equipped with ETCS "have

10  multiple redundant fail-safes in the system and if any of those detect any kind of variance" that

11  will detect not just "a catastrophic failure" but "any kind of variance, [causing the ETCS

12  Vehicles to] move it to a fail-safe mode, and [the vehicle] notifies the driver, either through

13  reduced power to the pedal, or though some type of check engine and warning signal. . . .

14  [T]here's no evidence what-so-ever that electronics has any impact on sudden acceleration."

15  *See* http://www.toyota.com/safety/electronic-throttle-control-system/ (last visited Oct. 25,

16  2011).  In a November 15, 2005 letter to NHTSA, Toyota falsely denied that its ETCS vehicles

17  ever could experience electronic SUA.  Toyota has maintained this dishonest position for

18  years, even though it knew that Toyota-manufactured ETCS vehicles can and do experience

19  SUA without application of the accelerator pedal.  In a June 19, 2004 letter to NHTSA, Toyota

20  falsely stated that its ECTS contained a built-in redundancy to prevent acceleration and that in

21  the event of sudden acceleration, the "vehicle brakes would have restrained vehicle motion."

22  Toyota has maintained this position, even though it knows that the ETCS vehicles can and do

23  experience SUA and that application of the brakes can fail to restrain vehicle motion because

24  no override system is in place.

25        91.   On February 18, 2010, TMS publicly issued one of its "Commitment to Our

26  Customers" in which it stated:  "First, we are fixing the vehicles covered by our recent recalls.

27  Second, Toyota engineers have rigorously tested our solutions – and we are confident that no

28

1  problems exist with the electronics in our vehicles.  We've designed our electronic throttle

2  control system with multiple fail-safe mechanisms to shut off or reduce engine power in the

3  event of a system failure.  And they work."  Still, Toyota refused to install the system into Mr

4  Houlf's vehicle during the multiple repairs.

5                                      **FIRST CAUSE OF ACTION**

6                          **SONG-BEVERLY CONSUMER WARRANTY ACT**

7                                      **(Against All Defendants)**

8          92.    Plaintiff hereby incorporates by reference as if fully set forth herein, each and

9  every allegation set forth in the preceding paragraphs of this Complaint.

10         93.    Mr. Houlf is a "buyer" within the meaning of Civil Code § 1791(b).  Plaintiff

11  purchased the Subject Vehicle from Toyota for personal, family or household purposes.

12         94.    The 2008 Tundra is a "consumer good" as defined by Civil Code § 1791(a).

13         95.    Mr. Houlf's vehicle was a "new motor vehicle" within the meaning of Civil

14  Code § 1793.22(e)(2).

15         96.    Mr. Houlf received written warranties, including but not limited to, warranties

16  from Toyota that Toyota vehicles, including the 2008 Tundras, and their components would be

17  free from all defects in material and workmanship; that the vehicles would pass without

18  objection in the trade under the contract description; that the vehicles would conform to the

19  promises and affirmations of fact made; that defendants would perform any repairs necessary

20  to ensure that the vehicles were free from any defects in material and workmanship; and that

21  defendants would maintain the utility of the vehicles and would conform the vehicles to the

22  applicable express warranties.

23         97.    Mr. Houlf has duly performed all the conditions on part under the express

24  warranties given to plaintiff, except insofar as the acts and/or omissions of the defendants, as

25  alleged herein, prevented and/or excused such performance.

26         98.    The Subject Vehicle is nonconforming to Toyota's express warranties because

27  it is subject to SUA and does not contain a brake override system or other safety system to

28

---

1    sufficiently mitigate the risk of SUA.  These nonconformities substantially impair the use,

2    value and safety of the Subject Vehicle.

3         99.    At all times relevant, Toyota failed to diligently make the repairs to the Subject

4    vehicle despite knowing that the vehicle was nonconforming in violation of the express

5    warranties and in need of repair.

6         100.   Toyota is aware of the nonconformities but, as detailed above, has misled

7    plaintiff into believing that the Subject Vehicle does not contain a nonconformity and does not

8    have a propensity for SUA, when the truth is otherwise.   Further, Toyota refuses to

9    acknowledge the existence of SUA beyond claiming it is caused only by the floor mats and

10   sticky accelerator pedals that were the subject of the above-described recalls.  When plaintiff

11   presented the Subject Vehicle to Toyota for repair, Toyota denied the existence of the

12   nonconformity and refused and continues to refuse plaintiff his rights and remedies under the

13   Warranty Act. Therefore, although plaintiff has complied with the notification requirements of

14   § 1793.2, any attempts to otherwise comply would be futile, including individual presentment.

15        101.   At all times relevant, Toyota willfully refused to correct or repair plaintiff's

16   vehicle and willfully refused to return the purchase price paid or buy back the Subject Vehicle

17   in violation of Civil Code § 1793.2.  Toyota has refused to acknowledge, honor or fulfill its

18   obligation to plaintiff under California law.

19        102.   In further violation of Civil Code § 1793.2, Toyota has failed to make available

20   to authorized service and repair facilities sufficient literature and replacement parts to carry-

21   out the repairs.

22        103.   Additionally, Toyota has failed to inform Mr. Houlf of his rights to restitution

23   and/or replacement of his vehicle under Civil Code § 1793.2.

24        104..   Pursuant to the provisions of California Civil Code § 1793.2, plaintiff is entitled

25   to restitution, including the purchase price paid and any other amounts allowable, and

26   damages, including civil penalties under Civil Code § 1794(c) in an amount double his actual

27   damages as a result of Toyota's willful refusal to correct or repair the defect and/or refusal to

28

1  return the purchase price or buy back his vehicle.  Plaintiff is also entitled to an injunction

2  requiring Toyota to comply with its obligations under the Warranty Act.

3

4  <center>SECOND CAUSE OF ACTION</center>

4  <center><u>Violation of California Business and Professions Code §§ 17200, *et seq.*</u></center>

5  <center><u>(Against All Defendants)</u></center>

6

7  105.   Plaintiff hereby incorporates by reference as if fully set forth herein, each and

8  every allegation set forth in the preceding and subsequent paragraphs of this Complaint.

9  106.   The UCL prohibits acts of "unfair competition," including any unlawful, unfair,

10  fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or

11  misleading advertising."

12  107.   In the course of conducting business, Defendants committed unlawful business

13  practices by, *inter alia*, making the misrepresentations and omissions of material facts, as set

14  forth more fully herein, and violating the Consumers Legal Remedies Act, California Civil

15  Code §§ 1750, *et seq.* (the "Act"), California Civil Code §§ 1572, 1573, 1709, 1711, the Song-

16  Beverly Consumer Warranty Act ("Warranty Act"), California Civil Code § 1793.2, California

17  Business & Professions Code §§ 17200, *et seq.*, and any other applicable statutes and common

18  law causes of action, whether or not specifically alleged herein.

19  108.   Mr. Houlf reserves the right to allege other violations of law that constitute

20  other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

21  109.   Defendants' acts, omissions, misrepresentations, practices, and non-disclosures

22  as alleged herein also constitute "unfair" business acts and practices within the meaning of

23  California Business and Professions Code §§ 17200, *et seq.* in that defendants' conduct is

24  substantially injurious to consumers, offends public policy, and is immoral, unethical,

25  oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits

26  attributable to such conduct.

27  110.   As stated in this complaint, Mr. Houlf alleges violations of various laws and

28  regulations, resulting in harm to consumers.  Toyota has also systematically denied the rights

1    of consumers, including plaintiff's, under the Warranty Act. Plaintiff asserts violation of the

2    public policy against engaging in false and misleading advertising, unfair competition and

3    deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong

4    of California Business and Professions Code §§ 17200, *et seq.*

5        111.   There were reasonably available alternatives to further defendants' legitimate

6    business interests, other than the conduct described herein.

7        112.   Defendants also violated and in some instances continue to violate the UCL

8    through one or more of the following unfair and/or fraudulent practices:

9            (a)    Selling to Mr. Houlf (as well as the purchasers and lessors of other

10   2008 Toyota Tundras) the Subject Vehicle that contains a safety-related nonconformity that

11   makes it more dangerous than other similar vehicles;

12           (b)    Failing to disclose that the Subject Vehicle (as well as other 2008

13   Toyota Tundras sold or leased to consumers) contains a safety-related nonconformity that

14   makes it more dangerous than other similar vehicles;

15           (c)    Misrepresenting, or making statements or omissions that were likely to

16   deceive , and did deceive Mr. Houlf, that incidents of SUA were only attributable to floor mats

17   and sticky pedals;

18           (d)    Failing to disclose that the "re-flashing" brake override remedy Toyota

19   performed on some cars would help mitigate or prevent injury in the case of an SUA event;

20           (e)    Failing to be truthful and honest with its customers, including Plaintiff,

21   and the public;

22           (f)    Failing to disclose that it had installed BOS on some vehicles but not

23   others; and

24           (g)    Manufacturing and selling the Subject Vehicle with the SUA

25   nonconformity, including the lack of a BOS or other fail-safe mechanism and failing to

26   adequately investigate, disclose, and remedy the nonconformity.

27       113.   Business & Professions Code §§ 17200, *et seq.*, also prohibits any "fraudulent

28

1  business act or practice."

2      114.   Defendants' actions, misrepresentations and omissions regarding the safety and

3  reliability of the Subject Vehicle as set forth in this complaint was likely to deceive a

4  reasonable consumer, including plaintiff.  The information that was withheld, denied and

5  covered up would be material to a reasonable consumer, including plaintiff.

6      115.   As a direct and proximate result of defendants' unlawful, unfair, and fraudulent

7  business practices, plaintiff suffered injury in fact and has lost money and property.

8      116.   Toyota's conduct has further injured Mr. Houlf by impairing competition

9  within the motor vehicle markets and preventing plaintiff from making fully informed

10  decisions about the motor vehicle he purchases.

11      117.   The unlawful, unfair, and fraudulent business practices described herein present

12  a continuing threat to Mr. Houlf and members of the general public in that defendants continue

13  to engage in these practices, and will not cease doing so unless and until forced to do so by this

14  Court.

15      118.   Plaintiff seeks monetary relief including a civil penalty in the amount double

16  his actual damages pursuant to Civil Code §1794(c) because Toyota's conduct was willful.

17  Plaintiff also seeks injunctive and other equitable relief requiring Toyota to: change its unfair

18  and deceptive business practices by, *inter alia*, informing purchasers and lessors of 2008

19  Toyota Tundras through a corrective advertising campaign about the true nature and dangers

20  posed by SUA in the 2008 Toyota Tundra, educate purchasers and lessors of 2008 Toyota

21  Tundras about what they should do in the event they experience an SUA event in their 2008

22  Toyota Tundra, and inform purchasers and lessors of 2008 Toyota Tundras about their post-

23  purchase (or lease) legal rights to repair, replacement or reimbursement pursuant to the

24  Warranty Act.

25      119.   Mr. Houlf also seeks restitution, in addition to all other relief this Court deems

26  appropriate, consistent with Business & Professions Code § 17203.

27  ///

28

## THIRD CAUSE OF ACTION

### Violation of California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*

#### (Against All Defendants)

120.    Plaintiff hereby incorporates by this reference as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

121.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "Act"). Plaintiff is a consumer as defined by California Civil Code § 1761(d). Plaintiff's vehicle is a good within the meaning of the Act.

122.    The Act forbids "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumers." California Civil Code § 1770(a).

123.    Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Mr. Houlf which were intended to result in, and did result in, the sale of Defendants' vehicles:

(5)    Representing that [the Subject Vehicle has] . . . approval, characteristics, . . . uses [or] benefits . . . which they do not have . . . .

                        *        *        *

(7)    Representing that [the Subject Vehicle is] of a particular standard, quality or grade . . . if [it is] of another.

                        *        *        *

(9)    Advertising goods . . . with intent not to sell them as advertised.

                        *        *        *

(16)    Representing that [the Subject Vehicle has] been supplied in accordance with a previous representation when [it has] not.

124.    Defendants violated the Act by representing through warranties, marketing, and advertisements that Mr. Houlf's 2008 Tundrae was reliable and fit for its ordinary purpose, as described above, when Toyota knew, or should have known, that the

1   representations were false and misleading. Defendants continue to make representations, as

2   alleged above, that the Subject Vehicle is reliable and fit for its ordinary purpose even though

3   it is not.

4      125.   Defendants' active cover-up and failure to disclose the dangerous risk of SUA

5   and the lack of adequate fail-safe mechanisms, including a BOS, also violate the above

6   subsections of the Act.

7      126.   Toyota had a duty to disclose the Subject Vehicle's inherent dangers as

8   described above to Mr. Houlf. These undisclosed facts about the safety and reliability of the

9   Subject Vehicle, including the propensity of the Vehicle to experience SUA, are material to

10  reasonable consumers. Furthermore, as alleged above, Toyota had exclusive knowledge of the

11  dangerously nonconforming nature of the ETCS on the Subject Vehicle by at least 2002

12  through, *inter alia*, Toyota's own testing and non-public consumer complaints, and concealed

13  these facts from Mr. Houlf.

14     127.   Pursuant to California Civil Code § 1782(d), plaintiff seeks a Court order

15  enjoining the above-described wrongful acts and practices of defendants and for restitution and

16  disgorgement.

17     128.   Pursuant to § 1782 of the Act, defendants were notified in writing by certified

18  mail of the particular violations of Section 1770 of the Act and demanded that defendants

19  rectify the problems associated with the actions detailed above and give notice to all affected

20  consumers of its intent to so act.

21     129.   Mr. Houlf seeks equitable and injunctive relief requiring Toyota to: change its

22  unfair and deceptive business practices by, *inter alia*, informing purchasers and lessors of 2008

23  Toyota Tundras through a corrective advertising campaign about the true nature and dangers

24  posed by SUA in the 2008 Toyota Tundra, educate purchasers and lessors of 2008 Toyota

25  Tundras about what they should do in the event they experience an SUA event in their 2008

26  Toyota Tundra, and inform purchasers and lessors of 2008 Toyota Tundras about their post-

27  purchase (or lease) legal rights to repair, replacement or reimbursement pursuant to the

28

1   Warranty Act.

2       130.   . On October 25, 2011, Plaintiff provided Defendants with written notice of his

3   claims, via U.S. certified mail, return receipt requested, and demanded that, within 30 days,

4   Defendants correct, repair, replace or otherwise rectify the acts and practices complained of

5   herein for the entire Class pursuant to California Civil Code § 1770. A copy of the letter is

6   attached as Exhibit 1. Defendants failed to do so or agree to do so. Therefore, Plaintiff now

7   seeks actual, punitive, and statutory damages for such deceptive practices pursuant to

8   California Civil Code §§ 1780(a) and 1782(d).

9                           **FOURTH CAUSE OF ACTION**

10                          <u>**Breach of Express Warranty**</u>

11                          <u>**(Against All Defendants)**</u>

12      131.   Plaintiff hereby incorporates by reference as if fully set forth herein, each and

13   every allegation set forth in the preceding paragraphs of this Complaint.

14      132.   Toyota sold the Subject Vehicle to plaintiff. In conjunction with the sale of the

15   Subject Vehicle, Toyota expressly warranted that it conduct "repairs and adjustments needed

16   to correct defects in materials or workmanship." Toyota also warranted that the Subject

17   Vehicle was of high quality and reliability.

18      133.   Toyota breached its express warranty by failing to perform repairs or

19   adjustments necessary to prevent SUA in the Subject Vehicle. Toyota also breached its

20   expressed warranty because the Subject Vehicle experienced SUA and was not of high quality.

21      134.   Plaintiff took reasonable steps to notify Toyota within a reasonable time that

22   the Subject Vehicle was not as represented.

23      135.   As a result of Toyota's breach of express warranty under California

24   Commercial Code § 2104 and the Magnusson-Moss Act, Chapter 15 U.S.CA. §§ 2301, et seq.,

25   Mr. Houlf has been damaged in the amount of the cost of repairs or replacement, and other

26   damages in an amount to be proven at the time of trial.

27   ///

28

FIFTH CAUSE OF ACTION

Breach of Implied Warranty of Merchantability

(Against All Defendants)

136.   Plaintiff hereby incorporates by reference as if fully set further herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

137.   Mr. Houlf purchased the Subject Vehicle from Toyota and/or was a third party beneficiary of agreements Toyota had with its distributors.  At the time of purchase, Toyota was in the business of selling vehicles to consumers.

138.   As set forth in detail above, the Subject Vehicle was not the same quality as those generally acceptable in the trade because it experienced SUA and did not have a BOS or other fail-safe system to mitigate against SUA.  Additionally, the Subject Vehicle did not conform to the affirmations of fact, as described above, that the Subject Vehicle was of high quality and reliability.

139.   Plaintiff took reasonable steps to notify Toyota within a reasonable time that the Subject Vehicle did not have the quality that a buyer would reasonably expect.

140.   As a result of Toyota's breach of its implied warranty of merchantability under Commercial Code § 2103 and the Magnusson-Moss Act, 15 U.S.CA.§§ 2308, et seq.,, and California Civil Code § 1790, Mr. Houlf has suffered damages including but not limited to repair and replacement costs, and other damages in an amount to be determined at trial.

SIXTH CAUSE OF ACTION

Breach of Implied Warranty of Fitness for a Particular Purpose

(Against All Defendants)

141.   Plaintiff hereby incorporates by reference as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

142.   Mr. Houlf purchased the Subject Vehicle from Toyota and/or was a third party beneficiary of agreements Toyota had with its distributors.  At the time of purchase, Toyota was in the business of selling vehicles to consumers.At the time of purchase, Toyota knew or

1    had reason to know that plaintiff was relying on Toyota's skill and judgment to provide a

2    vehicle that was suitable for that particular purpose.

3         143.    Plaintiff justifiably relied on Toyota's skill and judgment to furnish the Subject

4    Vehicle suitable for the purpose of safe transportation.

5         144.    As set forth in detail above, the subject vehicle was not reasonably fit for the

6    purpose of safe transportation because it experienced SUA and did not have a brake override

7    or other fail-safe system that would mitigate against SUA.

8         145.    As a result of Toyota's breach of the implied warranty of fitness for a particular

9    purpose, plaintiff has suffered damages including repair and replacement costs, and other

10   damages in an amount to be determined at trial.

11   **VI.    PRAYER FOR RELIEF**

12        WHEREFORE, Plaintiff prays against each Defendant, jointly and severally for the

13   following relief as follows:

14        1.    Damages and prejudgment interest;

15        2.    Restitution and injunctive relief;

16        3.    Civil penalties pursuant to Cal. Civ. Code § 1794(c);

17        4.    Return of the purchase price of the Subject Vehicle and all incidental and

18   consequential damages incurred by plaintiff;

19        5.    Return of all finance charges incurred by plaintiff for the Subject Vehicle;

20        6.    For attorneys' fees and costs of suit incurred herein; and

21        7.    For such other and further relief as the Court deems proper.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

---

34

Case No. : JCCP 4621

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL; DECLARATION OF HOULF

VII.   **DEMAND FOR JURY TRIAL**

    Plaintiff demands a trial by jury on all claims so triable.

Dated: January 5, 2012              By:    /s/
                                        BRIAN R. STRANGE

STRANGE & CARPENTER
BRIAN R. STRANGE (103252)
JOHN P. KRISTENSEN (224132)
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Telephone: 310-207-5055
Facsimile: 310-826-3210
lacounsel@earthlink.net
jkristensen@strangeandcarpenter.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com

           •    *Co-Lead Class Counsel*

<u>**DECLARATION OF MICHAEL HOULF**</u>

1

2          I, Michael Houlf, submit this declaration pursuant to Section 1780(d) of the

3    California *Consumers Legal Remedies Act* (Cal. Civ. Code §§ 1750, *et seq.*) and declare

4    the following:

5          1.        I am informed and believe that defendants TOYOTA MOTOR NORTH

6    AMERICA, INC. (hereinafter "Toyota N.A." or "TMA") and TOYOTA MOTOR SALES

7    U.S.A., INC. (hereinafter "Toyota U.S.A." or "TMS") do business in Los Angeles County,

8    California.

9          I declare under penalty of perjury under the laws of the State of California that the

10   foregoing is true and correct.

11         Executed this 25th day of October, 2011, in Cool, California.

12

13                                                          Michael Houlf

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT & DEMAND FOR JURY TRIAL; DECLARATION OF MICHAEL HOULF
-34-

1

**PROOF OF SERVICE**
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

2

3

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:

4

12100 Wilshire Boulevard, Suite 1900, Los Angeles, California  90025

5

On January 5, 2012, I served the forgoing document, described as:

6

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL;**
**DECLARATION OF HOULF**

7

8

[ x ]  by placing  [  ]  the original  **[ x ] via electronic transmission**
addressed as follows: See Service List

9

10

[X]     **VIA ELECTRONIC TRANSMISSION TO CASE ANYWHERE AT**
        **WWW.CASEANYWHERE.COM**

11

[  ]     **VIA ELECTRONIC MAIL**

12

[  ] I deposited such an envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

13

14

[X] As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

15

16

17

[  ] **BY PERSONAL SERVICE**

18

I delivered such envelope by hand to the addressee.
Executed on January 5, 2012, at Los Angeles, California.

19

[ X ]    **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

20

21

Gregory Tatum

22

23

24

25

26

27

28

**PROOF OF SERVICE**
**(Code Civ. Proc., § 1013a(3) Revised 5-1-88)**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 100 West Broadway, West Tower, Suite 500, Long Beach, California, 90802.

On **May 9, 2012**, I served the foregoing document described as **TOYOTA MOTOR NORTH AMERICA, INC.'s NOTICE OF REMOVAL TO FEDERAL COURT (INCLUDING CONSENT OF TMS AND NOTICE OF INTERESTED PARTIES)** on the interested parties in this action:

**[X]**    by placing the original/true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Todd M. Friedman, Esq<br>Law Offices of Todd M. Friedman, P.C.<br>369 S. Doheny Dr. Suite #415<br>Beverly Hills, Ca  90211 | Attorneys for Plaintiff<br>(877)206-4741 – phone<br>(866)633-0228 – fax |
| John P. Kristensen<br>Strange & Carpenter<br>12100 Wilshire Blvd., Ste. 1900<br>Los Angeles, CA 90025 | Attorneys for Plaintiff<br>(310) 207-5055 – phone<br>(310) 826-3210 – fax |
| Timothy Blood<br>Paula M. Roach<br>Blood Hurst & O'Reardon, LLP<br>701 B Street, Ste. 1700<br>San Diego, CA 92101 | Attorneys for Plaintiff<br>(619) 338-1100  – phone<br>(619) 338-1101 – fax |

**[X]   BY MAIL:** I deposited such envelope in the mail at Long Beach, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, said correspondence is deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Long Beach, California in the ordinary course of business; and there is delivery service by United States mail at the place so addressed.

**[X]**    (Federal): I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **May 9, 2012**, at Long Beach, California.

Regina K. Carhee